EMERSON *v.* BOYLES.

Opinion delivered March 1, 1926.

CRIMINAL LAW—CONTROL OF COURT OVER JUDGMENT.—Where the accused in a felony case pleaded guilty and was sentenced to a term in the penitentiary, and had served a part of his term, the trial court had no authority at the same term of court to set aside the sentence and direct the case to be continued, as the effect would be to put the accused in jeopardy twice for the same offense.

Certiorari to Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; judgment quashed.

STATEMENT OF FACTS.

H. A. Emerson, E. D. Chipman and R. L. Deal, members of the State Board of Charities and Corrections, and as such in charge of the Arkansas State Penitentiary and those confined therein, filed a petition for a writ of certiorari against J. M. Boyles to quash an order of the Pulaski Circuit Court discharging him from custody, and commanding his immediate release from the Arkansas State Penitentiary.

J. M. Boyles filed a petition in the Pulaski Circuit Court praying for a writ of habeas corpus to the members of the State Board of Charities and Corrections on the allegation that he was unlawfully imprisoned in the State Penitentiary.

It appears from the record that on the 22d day of July, 1925, at a regular term of the Perry Circuit Court, J. M. Boyles entered his plea of guilty to the crime of manufacturing mash, and his punishment was fixed by the court at one year in the State Penitentiary. It was therefore ordered by the court that the defendant be transported to the State Penitentiary, and confined at hard labor, for the period of one year. J. M. Boyles was transported to the State Penitentiary, and began serving his sentence.

On the 17th day of December, 1925, being an adjourned day of the same term of the court at which J. M. Boyles entered his plea of guilty and was sen-

tenced to the term of one year in the penitentiary, the circuit court of Perry County entered of record a judgment setting aside the sentence, which reads as follows:

"On this day comes on for hearing this cause, and the court finds that the judgment entered in the cause herein should not have been entered, and it is accordingly ordered and adjudged that the judgment rendered in the above entitled cause, at the present term of this court, be and the same is hereby set aside and held for naught, and the commitment heretofore issued is recalled. The keeper of the Arkansas State Penitentiary is hereby ordered to release the said defendant, J. M. Boyles. The court deeming it best for the defendant, and not harmful to society, the case is hereby continued on condition, first, that the defendant pay the cost of this court within thirty (30) days from this date, and second, that his behavior shall hereafter be good, pending which time he shall be released on his own recognizance. It is further ordered that a copy of this order be served on the keeper of the State Penitentiary."

The members of the Board of Charities and Corrections, who had J. M. Boyles in their custody, in the State Penitentiary, at the time the foregoing order was made, refused to obey it, and on the 22d day of December, 1925, J. M. Boyles filed his petition for a writ of habeas corpus against the members of the Board of Charities and Corrections in the Pulaski Circuit Court. Upon the hearing on December 24, 1925, it was adjudged that the petitioner, J. M. Boyles, be discharged from the custody of the members of the State Board of Charities and Corrections, and that he be immediately released from the State Penitentiary.

As above stated, the object of the writ of certiorari in this court by the Board of Charities and Corrections is to quash this order.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellant.

*Frauenthal & Johnson* and *Owens & Ehrman,* for appellee.

HART, J., (after stating the facts). The first inquiry presented for our consideration is the nature and extent of the power of the circuit court over its own judgments in vacating them during the same term at which they are rendered. The circuit court, in ordering the release of Boyles, proceeded on the theory that it is competent for the court to modify a judgment, in either a civil or criminal case, during the term at which the judgment was rendered. It is a rule of universal application that, so long as a judgment or sentence of a court remains unexecuted or is not put in operation, it is, in contemplation of law, in the breast of the presiding judge of the court, and is subject to revision and alteration during the same term at which it is rendered.

In the case at bar the circuit court set aside its judgment at the same term at which it was rendered, but it was after the defendant had served a substantial part of the sentence. J. M. Boyles entered a plea of guilty to the crime of unlawfully making mash, and was sentenced to serve a year in the State Penitentiary on the 22d day of July, 1925. He was, in due time, transported to the penitentiary, and was serving out his sentence when the court made the order setting it aside, on the 17th day of December, 1925. The authorities on the power of the court to set aside a sentence in a felony case after it has been partly executed at the same term are in direct conflict.

In *Bassett* v. *United States,* 9 Wall. (U. S.) 38, in an opinion delivered by Mr. Justice Miller it was held that it is competent for a court, for good cause, to set aside, at the same term at which it was rendered, a judgment of conviction on confession, though the defendant had entered upon the imprisonment ordered by the sentence. To the same effect see *State* v. *Butler* (Md.), 18 Atl. 1105, and *In the Matter of John Brittain,* 93 N. C. 587.

In *Ex parte Lange,* 18 Wall. (U. S.) 163, in an opinion delivered by the same learned judge, it was held that, the judgment of the court having been executed, so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court as to that offense is at an

end.  In discussing the limit to the power of the court in such cases, it was said:

"The judgment of the court to this effect being rendered and carried into execution before the expiration of the term, can the judge vacate that sentence and substitute fine or imprisonment, and cause the latter sentence also to be executed?  Or, if the judgment of the court is that the convict be imprisoned for four months, and he enters immediately upon the period of punishment, can the court, after it has been fully completed, because it is still in session of the same term, vacate that judgment and render another, for three or six months' imprisonment, or for a fine?  Not only the gross injustice of such a proceeding, but the inexpediency of placing such a power in the hands of any tribunal, is manifest.

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense.  And, though there have been nice questions in the application of this rule, to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party, when a second punishment is proposed in the same court, on the same facts, for the same statutory offense."

If the court has no power to set aside a judgment which has been partly executed, and increase the punishment at the same term during which the original judgment was rendered, it is as difficult to see upon what principle it would have the power to set aside the judgment and mitigate the punishment.  When a judgment is reversed or set aside, it is just as if it had never been rendered, and the defendant in the case will be placed in jeopardy just the same, whether his punishment is increased or diminished, at the second trial.  To illustrate:  If a person should be indicted and tried for murder in the first degree, and found guilty of manslaughter, and his punishment fixed at the lowest term for that

crime, there would be an implied acquittal of the higher degree of homicide, and he could not be tried for murder upon securing a new trial in the circuit court, or a reversal of the judgment in the Supreme Court. But, upon being retried, he could be again convicted of manslaughter, and his punishment fixed at the highest term for that offense. The reason is that, when he secures a new trial or a reversal of the judgment, as the case may be, the original judgment is set aside, and is in effect as if it had never been rendered. Hence no plea of former jeopardy could avail him anything, so far as the trial for manslaughter is concerned. We think the better reasoning, as well as the trend of authority, is that where the defendant has executed or entered upon the execution of a valid sentence, the court cannot, even during the term at which the sentence was rendered, set it aside and render a new sentence. 16 C. J. 1314.

In 12 Cyc. 783, it is said: "At any time during the term the court has power to reconsider the judgment, and to revise and correct it by mitigating and even by increasing its severity, where the original sentence has not been executed or put into operation; but, where the prisoner has paid his fine or his imprisonment has begun, the court has no power to recall him to revoke his former sentence and impose one which inflicts a greater punishment."

And in 2 Bishop's New Criminal Procedure (2d ed. § 1298), it is said: "The power of the court to alter its docket entries and records during the term wherein they are made includes the right within such time to revise, correct, and change its sentences, however formally pronounced, if nothing has been done under them. But steps taken under a sentence, for example, a substantial part execution thereof, will cut off the right to alter it, even during the term. And with the expiration of the term the power expires." See also Wharton's Criminal Procedure, 10th ed. § 1853; 8 R. C. L. 245; 25 Enc. of Law, 2d ed. 315, and 19 Enc. of Pleading and Practice, 493.

In *State* v. *Cannon,* 11 Ore. 312, Pac. 191, it was said that where a sentence has been passed upon the defendant, and the judgment has gone into effect by the commitment of the defendant under it, the court has done all that it has the legal power to do under the proceedings in that case.

In *Bradford* v. *People,* 22 Col. 157, 43 Pac. 1013, it was said that it is well established that, where the defendant has entered upon the execution of a valid sentence, such a sentence cannot be set aside and a new sentence entered.

*In re Jones,* 53 N. W. 468, the Supreme Court of Nebraska said that the power of a court to revise or change a judgment in a civil case is at an end after the same is in process of execution. It was likewise said that, while a district court has ample authority to correct a judgment in a criminal case at the term of court at which it was rendered, or a subsequent term, to make the same conform to the one actually pronounced, it has no jurisdiction to vacate a judgment in a criminal case after the same has gone into effect by the commitment of the defendant under it, and substitute for it another sentence at the same term of the court.

In *People* v. *Meservey,* 42 N. W. 1133, the Supreme Court of Michigan said, in discussing a case where the original sentence had gone into effect, that the circuit court had no power at that time to vacate the sentence, because the authority over the prisoners had passed out of its hands by its own order.

In *Grisham* v. *State,* 19 Tex. Ct. of Appeals, 504, the court said that in criminal cases the power of courts over their judgments during the term at which they are rendered does not extend to cases where punishment has already been inflicted, in whole or in part, and that conviction, followed by an endurance of punishment, will bar a future prosecution for the same offense. See also *Com.* v. *Weymouth,* 2 Allen (Mass.), 144, 79 Am. Dec. 776; *Brown* v. *Rice,* 57 Me. 55, 2 Am. Reps. 11; *Com.*

v. *Foster,* 122 Mass. 317, 23 Am. Reps. 326; *State* v. *Crook,* 115 N. C. 760; and *State* v. *Meyer,* 86 Kan. 793, 122 Pac. 101, 40 L. R. A. (N. S.) 90.

In *United States* v. *Vayson,* 27 Philippine Reps. 447, the court held: "Where a court, in passing sentence, has acted under a misapprehension of the facts necessary and proper to be known in fixing the penalty, it may, in the exercise of sound judicial discretion, and in the furtherance of justice, *ex mero motu,* before the judgment has become final, and before the original sentence has gone into operation, revise and increase or diminish such sentence within the limits authorized by law."

This holding is a recognition of the rule, well established, that, where the defendant has entered upon the execution of a valid sentence, the court loses jurisdiction over the case.

Reasoning by analogy, it may be said that the case is not unlike one where an appeal is taken to the Supreme Court at the same term during which the judgment is rendered in the lower court.

In *Robinson* v. *Arkansas Loan & Trust Co.,* 72 Ark. 475, it was held that, when an appeal is granted and an authenticated copy of the record is filed in this court, the suit is thereby removed to the Supreme Court. When the transcript is filed, the jurisdiction of the Supreme Court is complete, and the lower court loses jurisdiction except to correct its judgment to make it speak the truth, in aid of the jurisdiction of the appellate court. The same rule has been held applicable to criminal cases. *Freeman* v. *State,* 158 Ark. 262.

Thus it will be seen that, while the general power of the court over its judgments, both in civil and criminal cases, during the term in which they are first rendered is undoubted, still there are well known exceptions to the general rule. If the trial court loses jurisdiction over the case when the statutory requirements for an appeal are complied with, and a transcript of the record is filed with the clerk of this court, it would seem that for a similar reason the trial court would lose jurisdiction of.

the case when it had issued its commitment of the defendant to the State Penitentiary, and the defendant had been transported there, and was serving his sentence.

Reference has been made to the case of *Williams* v. *State,* 125 Ark. 287, and *Davis* v. *State,* 169 Ark. 932; but we do not consider that either of these cases has any direct bearing upon the decision of the case at bar. In the Williams case, the defendant was serving a term in the State Penitentiary for a felony, and, under the statute, was brought into court to testify in another case, and the court attempted to punish him for contempt by confinement in the county jail. It was held that the circuit court had no authority to set aside the judgment under which Williams was serving a sentence in the penitentiary, and confine him in the county jail for contempt. In the Davis case it was expressly held that the circuit court had no inherent power to suspend, indefinitely, the execution of a sentence against one found guilty of crime, nor did it have any such power under the provisions of the act of 1923, authorizing circuit judges to postpone the pronouncement of final sentence, under certain conditions. The question of the power of the court to set aside a sentence which had been executed in part, was not determined or even considered.

It has been suggested that the act of 1923 just referred to, conferred upon the court the power to set aside the judgment and postpone the pronouncement of a new sentence in the case at bar. This makes it necessary for us to pass upon the constitutionality of this statute and to determine its application to the question under consideration. The constitutionality of the statute was, by implication, upheld in the Davis case, and also in *Ex parte United States,* 242 U. S. 27.

In a case-note to 26 A. L. R. 400, it is said that, although the opposite view obtains in a few jurisdictions, by the weight of authority a statute is not unconstitutional because it confers upon the court the power to postpone the pronouncement of sentence indefinitely, in the discretion of the court, and many decisions from

courts of last resort of the several States are cited in support of the text. In this connection, it may be stated that the cases cited sustain the constitutionality of such acts, and expressly hold that the power thus conferred upon the circuit court does not encroach on the constitutional powers of the executive to grant reprieves and pardons. We do not think, however, that the statute has any bearing on the main question. Section 1 provides that whenever, in criminal trials, in the circuit court, a plea of guilty shall have been accepted, or a verdict of guilty shall have been rendered, the judge trying the case shall have authority,. if he shall deem it best for the defendant and not harmful to society, to postpone the pronouncement of final sentence and judgment upon such conditions as he shall deem proper and reasonable, as to probation of the person convicted, the restitution of the property involved, and the payment of the costs of the case. Thus it will be seen that § 1 does not touch upon the power of the circuit court to alter or revise its own judgments during the same term, after such judgment has been put in operation and the defendant has begun to serve his sentence under it. Section 2 of the act deals entirely with the power of the court to revoke the postponement mentioned in § 1 and pronounce sentence. Section 3 deals with the question of costs. The act may be found in the General Acts of Arkansas, 1923, p. 40.

The result of our views is that the first judgment and sentence of the Perry Circuit Court did not remain in the breast of the presiding judge until the end of the term subject to revision, alteration or rescission, but that it passed entirely from the control of the court by its own action. When the court rendered a judgment sentencing the defendant to a term in the State Penitentiary, and issued its commitment, directing the sheriff to transport the defendant to the penitentiary for the purpose of serving his sentence, and when the defendant had served a part of the sentence, the court lost jurisdiction over the case, and could not, even at the same term, set aside its

original sentence and postpone the pronouncement of sentence under the act of 1923, just referred to.

In other words, we are of the opinion that the commitment, after the record of conviction was made, and the defendant had served a part of his sentence, completely exhausted the power of the circuit court, and ousted it of jurisdiction to set aside its judgment, for the reason that, to permit the judgment to be set aside and another sentence to be imposed some time in the future, after the first sentence had been partially executed, would, in effect, put the defendant in jeopardy twice for the same offense.

It follows that the judgment of the Pulaski Circuit Court, ordering J. M. Boyles to be released from the State Penitentiary, should be quashed, and it is so ordered.

SMITH and HUMPHREYS, JJ., dissenting.

SMITH, J., (dissenting). In directing that the judgment of the circuit court be quashed and that appellee be remanded to the penitentiary to serve the remainder of his sentence, the majority give as their reason for so ordering "that to permit judgment to be set aside, and another sentence to be imposed sometime in the future, after the first sentence had been partially executed, would, in effect, put the defendant in jeopardy twice for the same offense." This solicitude for appellee's welfare is not only misplaced, but is worse than wasted. The majority take no account of the fact that appellee not only consents to the order quashed, but is struggling desperately to have it enforced. The issue in the present appeal is, not whether appellee should be safeguarded against the possibility of being twice punished for the same offense, but is, shall this court compel the full execution of a sentence which the trial court has adjudged should be suspended?

It will be remembered that the order suspending appellee's sentence was rendered at the same term of the court at which the judgment sentencing him to the penitentiary was rendered, and the majority have held that

the fact that appellee had been confined in the penitentiary deprived the court of the jurisdiction to suspend the sentence, even during the same term of court.   It follows, therefore, that, if a defendant should be convicted, and sentence pronounced, and the defendant committed to prison pursuant to the sentence, the trial court loses all control or power to correct any error which might later be made to appear.   For instance, newly-discovered evidence might be found which would make it appear certain that the defendant had been improperly convicted.   The trial court has been made impotent in such cases to grant relief, even though the evidence was newly-discovered before the adjournment of the term at which the conviction was had.

In the case of *Williams* v. *State,* 125 Ark. 289, we held that ''there seems to be no question about the power of the court to set aside a judgment of conviction before the convict has begun serving his sentence, nor is there any doubt that the court has the power at any time during the term to set aside a judgment for the correction of errors.''   This broad statement of the power of the trial court to set aside a judgment of conviction to correct errors at the same term at which the judgment was rendered does not contain the limitation now placed upon the courts that this may be done provided the defendant has not commenced his sentence.   Nor was any such limitation upon the power of the trial court recognized in the case of *Holden* v. *State,* 156 Ark. 521, where it was said: ''There is no authority in law for the trial court to suspend the execution of a judgment of conviction in a criminal case from term to term.   The court, during the term, to be sure, has power over its judgment and could set aside the same, but at the close of the term the conviction and judgment and sentence become final, and any order suspending the execution of same, when the defendant is in the presence of the court or in the custody of the sheriff, in the absence of a statute authorizing it, is void.   The law contemplates that, upon a verdict of guilty,

unless such verdict is set aside and a new trial granted, the court shall render a judgment of sentence which, in the absence of a statute duly authorizing its suspension, must be duly executed. See §§ 3203-4, Crawford & Moses' Digest." Of the language quoted above more will later be said. To the same effect, see the cases of *Killian* v. *State*, 72 Ark. 137; *Ashley* v. *Hyde and Goodrich*, 6 Ark. 92; *Wells Fargo & Co.* v. *W. B. Baker Lbr. Co.*, 107 Ark. 415. In the case last cited it was held (to quote the syllabus) that "where the trial court overrules defendant's motion to set aside a default judgment rendered against him, the court retains jurisdiction, during the term, to set aside the judgment, even though an appeal has been prayed by defendant, and granted, so long as the appeal remains unperfected." Many other cases in our reports to the same effect could be cited.

In the case of *State* v. *Butler*, 18 Atl. 1105, the Court of Appeals of Maryland considered a statute of that State providing that "no judgment upon, any indictment for any felony or misdemeanor shall be stayed or reversed for any matter or cause which might have been the subject of demurrer to the indictment." The court there said: "But we do not think that either this statute or the cases cited in any manner modify or limit the long-established principle that courts have power to set aside or change their judgments during the term at which they are entered. It is not necessary to cite numerous authorities to support this doctrine. In his work on Judgments (section 90) Mr. Freeman says: 'The power to vacate judgments was conceded by the common law to all its courts. This power was exercised in a great variety of circumstances, and subject to various restraints. The practice in the different States is in many respects so conflicting that few rules can be laid down as universally applicable. One rule is, however, undoubted. It is that the power of a court over its judgments, during the entire term at which they are rendered, is unlimited.' The full extent of the control of courts over their own judgments in both civil and criminal cases,

during the term, is fully recognized by this court in the case of *Seth* v. *Chamberlaine,* 41 Md. 194, in which Judge Alvery, delivering the opinion of the court, said: 'The principle   *   *   * is of every day application, in the practice of the courts of this State and elsewhere, that the court retains power over its own judgments and orders, in both civil and criminal cases, during the term at which they are entered or made, and will, during that time, set them aside, or change or modify them, as circumstances may require.' " In that case it was held (to quote a syllabus) that "the court can so set aside a judgment sentencing defendant to pay a fine or stand committed, though the judgment may have been partly executed, by commitment and service for part of the time."

In the case of *In re John Brittain,* 93 N. C. 587, the defendant had been sentenced to a year in the penitentiary, and had been confined for a period of eight days under his sentence, when he was ordered back into court at the same term and the unexpired portion of the sentence was remitted. The power of the trial court was questioned, but this power was upheld by the Supreme Court of North Carolina, and in upholding this power it was said: "It would be very extraordinary if this form of mitigating a punishment during the sitting in which it was imposed, was to be denied the court, and thus the sentence become irrevocable. Cannot the judge remit part or even all of a fine? If so, is his authority to reduce the term of confinement to be denied?"

The majority cite 16 C. J. 1314. In the section of the text appearing at that page appears the following statement: "It has been held, however, that where a sentence has been partly executed it may be revised and another in diminution or mitigation substituted for it during the term." The cases cited in the note to the text sustain the statement made.

The majority quote from 12 Cyc. 783, in which the statement appears that "where the prisoner has paid his fine or his imprisonment has begun, the court has no power to recall him to revoke his former sentence and

impose one which inflicts a *greater punishment.*" As we have pointed out, there was no effort here to impose a *greater* punishment. On the contrary, the obvious purpose of the court was to mitigate the punishment.

In volume 3 Wharton's Criminal Procedure (10th ed.) § 1853, it was said: "As a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased."

Section 247 of the chapter on Criminal Law, 8 R. C. L., page 244, reads as follows: "Where a judgment has been fully satisfied by the defendant, the trial court has no power to amend it by increasing the punishment after the term at which the judgment was rendered, or even during the same term. The ends of justice will not be served by permitting the State, after the sentence of the law has been discharged, to open the case for any purpose, and least of all to insert an additional penalty. To permit this would be like punishing the delinquent the second time for the same offense. Thus it has been held that, where a court has imposed a fine and imprisonment when the statute confers power only to punish by fine or imprisonment, and the fine has been, paid, the court cannot, even during the same term, modify the judgment by imposing imprisonment instead of the former sentence, and, the judgment having been executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court as to that offense is at an end. The rule seems to be well established that the trial court is without power to set aside a criminal judgment after it has been partly satisfied by the defendant, and impose a new or different judgment increasing the punishment, even at the same term of court at which the original judgment was imposed. And of course a judgment which has been partly satisfied by the defendant cannot be set aside by the trial court, and a new judgment increasing the

punishment imposed, after the term of court at which the first judgment was rendered.''

In volume 25 A. & E. Ency. of Law (2d ed.) page 315, it is said: ''Ordinarily the trial court may, at any time during the term at which the sentence was rendered and before execution has begun, amend or vacate the sentence, and render a new sentence in, accordance with law. As a general rule, where the defendant has executed or entered upon the execution of a valid sentence, the court cannot, even during the term at which the sentence was rendered, set it aside and render a new sentence. But it has been held that the court may, at any time during the term at which the sentence was rendered, modify it by remitting part of the punishment, even though its execution has already commenced.''

As is said by the majority, the Supreme Court of the United States, in the case of *Basset* v. *United States,* 9 Wall. 38, held that it is competent for the court, for good cause, to set aside, at the same term at which it was rendered, a judgment of conviction on confession, though the defendant had entered upon the imprisonment ordered by the sentence, and I submit there is nothing in the later opinion of the same court in *Ex parte Lange,* 18 Wall. 163, which impairs the authority of that case, and certainly not as applied to the facts of this case. The quotation from that opinion found in the majority opinion in the instant case speaks for itself.

The texts from which I have quoted rather extensively cite a number of annotated cases which themselves cite a very large number of other cases, and it would be profitless to review these numerous cases. It may be conceded that there is a conflict in the authorities, but, in view of this conflict, it would be best, in my opinion, to follow the Supreme Court of the United States, and especially so as we have not heretofore decided the exact point in issue.

Thus far I have considered the question in issue as a common-law principle, but there is a statute which, in my opinion, should be taken into account, but which

the majority appear to regard as inapplicable. This is Act 76 of the General Acts of 1923 (Acts 1923, page 40), entitled, "An act to authorize circuit judges to suspend sentences upon certain conditions and for other purposes." This act has a history which should not be disregarded in interpreting it.

The constitutionality of this act is conceded by the majority. If it were questioned, the annotator's note to the case of *State of Washington* v. *Starwich,* 206 Pac. 29, would show that such acts have generally been held to be constitutional. The most common attack upon such legislation has been that it encroached upon the power of the Governor to exercise the pardoning power, but the cases cited by the annotator in 26 A. L. R. 393, where the case of *Washington* v. *Starwich* appears, show very conclusively that the legislation is not open to that objection.

But to return to the history of this act. In the case of *Holden* v. *State, supra,* from which I have already quoted, we said: "There is no authority in law for the trial court to suspend the execution of a judgment of conviction in a criminal case from term to term."

This opinion was handed down on January 22, 1923. The General Assembly was in session at the time this opinion was rendered, and the bill which became act 76 of the Acts of 1923, *supra,* was immediately passed, and was approved by the Governor February 9, 1923. The obvious purpose of the act was to give the courts a power which we had just held they did not possess. By this act it was provided that *whenever* a plea of guilty shall have been accepted, or a verdict of guilty shall have been rendered, the judge trying the case shall have authority, if he deem it best for the defendant and not harmful to society, to postpone the pronouncement of final sentence and judgment, upon such conditions as he shall deem proper and reasonable as to the probation of the person convicted, the restitution of the property involved, and the payment of the costs of the case.

The first word appearing in this act is the adverb of time—"Whenever." A new power was conferred upon

courts, to be exercised "whenever" the courts saw proper. This word should probably be limited to any period of time while the term of court continues at which the plea of guilty was entered or the verdict of guilty was rendered, but it occurs to me that it is a limitation of the new power there given to circuit courts to say that the beneficent provisions of the act may not be extended to any one simply because he has served some portion of his sentence, and certainly is this true when the person convicted waives any right—if such it may be called—growing out of the fact that he has suffered a portion of his sentence.

I think therefore that the judgment of the court below should be affirmed, and especially so as we are not advised by the record before us as to the reasons moving the court to the action taken.

I am authorized to say that Mr. Justice HUMPHREYS concurs in the views here expressed.