FLETCHER *v.* STATE.

4125                                    128 S. W. 2d 997

Opinion delivered May 22, 1939.

*Chris Carpenter,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

McHANEY, J. Appellant was charged by information with the crime of grand larceny for the stealing of "one yellow jersey heifer, past two years old, and roan calf, with white spots in flank, same being the property of F. B. Hoover." He was tried and found guilty on January 16, 1939, his punishment being fixed at one year in the penitentiary, and judgment was accordingly

entered. On the same day he filed his motion for a new trial which was overruled, and he prayed and was granted an appeal to this court, sixty days being given to file a bill of exceptions. The transcript was filed in this court on March 15, 1939, and appellant's brief was filed twelve days later, on March 27th.

On April 25, during the January term of the Arkansas circuit court, southern district, but at an adjourned day thereof the court made an order which recited the facts above stated and continued as follows: "Now on this 25th day of April, 1939, being an adjourned day of the regular January Term, 1939, the court on its own motion, upon investigation finds, that the proof on the part of the State of Arkansas, fails to sustain the charges of the information filed herein; and fails to sustain the verdict and judgment rendered herein on the 15th day of January, 1939. Now, therefore, the verdict and judgment of conviction of the said defendant, Hollis Fletcher, rendered herein on the 16th day of January, 1939, is hereby vacated and set aside; new trial granted and ordered, and this cause set for trial on the second day of the next regular term of this court."

The record has been amended by stipulation to include said order. The question naturally arises as to the validity of said order although not raised by the briefs of the parties. It is a novel situation, but not entirely new to this jurisdiction. The question is: Did the court have jurisdiction to make the order at the same term, but after the appeal had been perfected in this court? We feel compelled to answer the question in the negative, because of prior decisions of this court which were grounded on good authority and sound reasoning. In *Freeman v. State*, 158 Ark. 262, 249 S. W. 582, 250 S. W. 522, a case in point, Freeman was convicted of grand larceny and sentenced to a year in the penitentiary on October 20, 1922, in the Sebastian circuit court. He appealed promptly to this court and the judgment was affirmed on January 27, 1923. Thereafter, on February 13, 1923, he moved the trial court to modify the judgment so as to sentence him to the reform school alleging that he was a minor 16

years of age at the time of trial. The court overruled the motion and he again appealed to this court. The case was again affirmed. On petition for re-hearing, he suggested a diminution of the original record and asked for certiorari to the clerk of the trial court directing him to certify to this court a transcript of the record showing the date of adjournment of the term of court at which he was convicted and sentenced, the object no doubt being to show that the term of the trial court had not adjourned when his original appeal was taken. His motion for certiorari was denied. The court said: "The request for the writ is denied because the perfection of the record as to the date of the adjournment of term of court could not benefit appellant. It is true we affirmed the judgment of the circuit court upon the ground that the sentence could not be modified after the adjournment of court. That was not the only ground which called for an affirmance. An appeal was prosecuted to the Supreme Court from the original judgment of conviction and sentence, which was affirmed. The appeal lifted the cause out of the circuit court; and, as the judgment was affirmed, it was beyond the power of that court to afterwards modify or change it in any respect. After the appeal was taken and the transcript lodged in this court, the only jurisdiction remaining in the circuit court was to correct the judgment by *nunc pro tunc* order to make it speak the truth, or upon reversal and remand of the cause to follow the directions of this court. The motion for the writ and for rehearing is overruled."

Another case in point is *Emerson* v. *Boyles,* 170 Ark. 621, 280 S. W. 1005, 44 A. L. R. 1193. Boyles plead guilty to manufacturing mash and he was sentenced to a year in the penitentiary on July 22, 1925, a regular day of the July term of the Perry circuit court. He shortly thereafter began serving his sentence. On December 17, 1925, an adjourned day of the same term, the trial court made this order: "On this day comes on for hearing this cause, and the court finds that the judgment entered in the cause herein should not have been entered, and it is accordingly ordered and adjudged that the judgment rendered in the above entitled cause, at the present term

of this court, be and the same is hereby set aside and held for naught, and the commitment heretofore issued is recalled. The keeper of the Arkansas State Penitentiary is hereby ordered to release the said defendant, J. M. Boyles. The court deeming it best for the defendant, and not harmful to society, the case is hereby continued on condition, first, that the defendant pay the cost of this court within thirty (30) days from date, and second, that his behavior shall hereafter be good, pending which time he shall be released on his own recognizance. It is further ordered that a copy of this order be served on the keeper of the State Penitentiary." The penitentiary officials refused to obey this order and to release Boyles, and on December 22, 1925, he brought habeas corpus against them to be released. The Pulaski circuit court granted the writ and the Board appealed. This court held that where a defendant is convicted, enters the penitentiary in execution of the judgment, and serves a part of his sentence, the trial court has no jurisdiction at the same term of court to set aside the sentence and direct the case to be continued, as it would be in effect putting him twice in jeopardy for the same offense. In doing so the court used this language: "This holding is a recognition of the rule, well established, that, where the defendant has entered upon the execution of a valid sentence, the court loses jurisdiction over the case.

"Reasoning by analogy, it may be said that the case is not unlike one where an appeal is taken to the Supreme Court at the same term during which the judgment is rendered in the lower court.

"In *Robinson* v. *Arkansas Loan & Trust Co.*, 72 Ark. 475, 81 S. W. 609, it was held that, when an appeal is granted and an authenticated copy of the record is filed in this court, the suit is thereby removed to the Supreme Court. When the transcript is filed, the jurisdiction of the Supreme Court is complete, and the lower court loses jurisdiction, except to correct its judgment to make it speak the truth, in aid of the jurisdiction of the appellate court. The same rule has been held applicable to criminal

cases. *Freeman* v. *State,* 158 Ark. 262, 249 S. W. 582, 250 S. W. 522.

"Thus it will be seen that, while the general power of the court over its judgments, both in civil and criminal cases, during the term in which they are first rendered is undoubted, still there are well known exceptions to the general rule. If the trial court loses jurisdiction over the case when the statutory requirements for an appeal are complied with, and a transcript of the record is filed with the clerk of this court, it would seem that for a similar reason the trial court would lose jurisdiction of the case when it had issued its commitment of the defendant to the State Penitentiary, and the defendant had been transported there, and was serving his sentence."

So, in this State, there are two well known exceptions to the rule that the court has general power over its judgments during the term in which they are first rendered. One is that when an appeal has been perfected in this court and the other is that the defendant has served a portion of his sentence. In either case the trial court is without jurisdiction to modify its judgment, "except to correct its judgment to make it speak the truth in aid of the jurisdiction of the appellate court." There can be no such thing as two courts having jurisdiction of the same case, involving the same subject-matter, at the same time.

We, therefore, hold that the order of April 25, 1939, was ineffective because the case was then pending on appeal in this court.

Coming now to the merits of the appeal, two questions are raised. The first is that there is a variance between the information and the proof. The second is the sufficiency of the evidence to sustain the verdict.

Appellant was charged with stealing two animals—a "yellow jersey heifer, past two years-old" and a "roan calf, with white spots in flank." It appears to us that there can be no question as to variance between the information and proof as regards the calf, because appellant was found with it in his possession and delivered it to Mr. Hoover, the owner, when he came and identified

it as his calf. The cow which was the mother of this calf was found dead, about three quarters of a mile from appellant's house. The skin on the head of the dead cow had been removed and the ears were cut off. She had been dead about three days. Mr. Hoover identified her by her horns. Another witness, Hal Collier, identified the cow and calf as the property of Hoover. Still another witness, Walter Perry, testified that he traded two dogs to appellant for the cow and calf in question, a jersey cow and calf; that appellant came and got the dogs and the witness went after the cattle, but was told by appellant to come back next day and he would have the cow up there; that he went back in a day or so and appellant told him the cow got run into by a car and was killed; that he saw the cow and calf before the cow was killed and saw the calf after it was taken from appellant, but did not see the dead cow; and that the calf was the same as the one he had traded with appellant for. He described the cow as "a little jersey cow—weighing about 450 pounds. Just the average color of a jersey cow, and the calf appeared to be about two months old." Appellant showed him the cow and calf and offered to trade them for his two dogs. It was a bull calf.

We cannot agree with appellant that there was a fatal variance as to the cow. It is argued that, because the charge was the stealing of a yellow jersey heifer, past two years old, and that the witnesses referred to a jersey cow, this constitutes a variance; that a heifer is not a cow. Webster defines the word "heifer" as "a young cow; a cow that has not had a calf." The animal in this case was a young cow with her first calf, and while the use of the word "heifer" in the information was not exactly accurate, yet the additional words, "past two years old" shows that she was a mature animal which properly would be called a cow. When all the language in the information describing the animal is considered together, we are of the opinion that the testimony referring to her as a "jersey cow weighing about 450 pounds" and "a little jersey cow weighing about 450 pounds just the average color of a jersey cow" does not constitute a substan-

tial variance. In *State* v. *Haller*, 119 Ark. 503, 177 S. W. 1138, the indictment charged Haller with stealing "one cow (bull)" etc. In holding there was no variance between the indictment and the proof which showed that a bull was the subject of the larceny, this court said: "The liberality of our code of criminal practice is illustrated in the decision of this court in *State* v. *Gooch,* 60 Ark. 218, 29 S. W. 640, and we think according to the liberal rule laid down in that case the indictment was sufficiently clear to indicate an animal of that kind of the male species, and that the proof in this case conformed to the allegations of the indictment."

We think the evidence sufficient to support a conviction. He offered a plausible explanation of his possession of the calf, but the jury refused to accept it. Possession of property recently stolen is sufficient to support a conviction for the larceny thereof, if unexplained to the satisfaction of the jury. *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93. Moreover, the testimony of Walter Perry that appellant traded him a jersey cow and calf for two dogs, and that the calf is the one in controversy, shows that appellant was exercising acts of ownership over both animals, which the proof shows did not belong to him.

We find no error, so the judgment is affirmed.

SMITH and HOLT, JJ., dissent.

SMITH, J. (dissenting). By stipulation, the judgment of the trial court setting aside the conviction and the sentence of the court pronounced thereon has been made a part of the record in this case. This order and judgment was made and entered at the same term of court at which the judgment sentencing appellant to a term in the penitentiary was made and entered, but it was not made until after appellant had prayed and perfected his appeal to this court.

Grave doubt has been expressed in our consultation by the members of this court as to the legal sufficiency of the testimony to support the conviction, and Justice Holt dissents upon that ground, but he also concurs in what is

hereinafter said. In this respect the case is not unusual. Such a condition frequently arises. But in another and far more important respect, the case is very unusual. We have now before us a record containing the solemn finding and recital that the trial judge has concluded that the testimony did not sustain the conviction. It was the peculiar province of the trial judge to determine that fact. It was said in the case of *Missouri Pacific Rd. Co. v. Brewer*, 193 Ark. 754, 102 S. W. 2d 538, as has been said in many other cases, that the trial judge has a power which we do not possess in passing upon the weight and sufficiency of the testimony.

It is true, of course, that the action of the trial judge in sentencing appellant to the penitentiary imports a finding that the testimony was sufficient to sustain the conviction. But during the continuance of that term he changed his opinion. This may have resulted from further reflection, or upon a consideration of new or additional testimony. But in any event, we have before us the judgment of the court, rendered at the same term of court, finding that the testimony does not sustain the conviction.

Appellant does not, upon this additional record, ask that his appeal be dismissed, but in bringing this additional record before us, he does ask the relief to which he may be entitled. If to grant him the relief, to which he is plainly entitled, it is necessary to dismiss the appeal, we should make that order. Certainly, we should not affirm his conviction and order him sent to the penitentiary, when the trial judge has found that the testimony is not sufficient to sustain the conviction.

The majority say the lower court was without power to make any order in the case after the appeal was perfected. When sentence was pronounced appellant could take no action to obtain relief except to appeal to this court, and that he did. But before the adjournment of the term at which the sentence was pronounced the trial court concluded that he had erred in sentencing appellant to the penitentiary, for the reason that the testimony was not sufficient to sustain the conviction. Shall we deny the trial judge the right to correct the error which

he admits was made? The majority say we must because appellant has appealed to this court. If this be true, why not dismiss the appeal and let justice prevail?

The majority say they are constrained to the conclusion which they have reached by the following cases: *Robinson* v. *Arkansas Loan & Trust Co.*, 72 Ark. 475, 81 S. W. 609; *Freeman* v. *State*, 158 Ark. 262, 249 S. W. 582, 250 S. W. 522; *Emerson* v. *Boyles*, 170 Ark. 621, 280 S. W. 1005, 44 A. L. R. 1193.

In the first of these—the Robinson case—there was involved only the question when an appeal had been perfected, and when a second appeal might be prosecuted. The trial court in that case had made no order, either at the same or at a subsequent term, vacating the judgment appealed from.

In the opinion on re-hearing in the case of *Freeman* v. *State, supra*, it was said that ''The appeal lifted the cause out of the circuit court.'' That was true in that case because, as stated in the original opinion, ''the trial court was without jurisdiction to modify the judgment, upon motion, after the term of court at which the judgment was rendered had expired.'' In other words, the control of the court over the judgment had ceased, because the term of court at which it was rendered had expired, and it was then beyond the power of the court to modify or change the judgment. But not so here.

The case of *Emerson* v. *Boyles, supra*, involved only one question, which is reflected in the single headnote to that case, which reads as follows: ''Where the accused in a felony case pleaded guilty and was sentenced to a term in the penitentiary, and had served a part of his term, the trial court had no authority at the same term of court to set aside the sentence and direct the case to be continued, as the effect would be to put the accused in jeopardy twice for the same offense.''

In so holding the majority opinion states that the authorities on the question presented and decided are divided, and that among other courts which had held contrary to the conclusion there announced was the Supreme Court of the United States. I am not now pressing my

dissenting view in that case, nor am I trying to reinforce the dissenting opinion. It will speak for itself. What I do protest against is the extension of the majority opinion.

The majority opinion in the Emerson case is authority for holding that the court had the power to set this judgment aside during the term at which it was rendered, even though an appeal had been prosecuted. The following statement from 12 Cyc. 783 is there approved: " 'At any time during the term the court has power to reconsider the judgment, and to revise and correct it by mitigating and even by increasing its severity, where the original sentence has not been executed or put into operation; but, where the prisoner has paid his fine or his imprisonment has begun, the court has no power to recall him to revoke his former sentence and impose one which inflicts a greater punishment.' ".

The opinion itself states the law to be that "It is a rule of universal application that, so long as a judgment or sentence of a court remains unexecuted or is not put in operation, it is, in contemplation of law, in the breast of the presiding judge of the court, and is subject to revision and alteration during the same term at which it is rendered."

Here, let it be remembered the judgment or sentence of the court remains unexecuted and has not been put into operation. The reason given in the Emerson case, *supra,* for holding that a sentence may not be vacated, after it has been put into operation, and has been executed in whole or in part is, as the headnote above quoted says, "would be to put the accused in jeopardy twice for the same offense." I do not understand that any court has ever held that it twice puts a man in jeopardy to try him a second time upon the same charge, after a new trial has been granted setting aside a prior conviction. If that is the law we will have to readjust and rewrite our entire criminal procedure.

In the chapter on Judgments, 15 R. C. L., § 132, p. 681, it is said: "Within the limits of time allowed by law a judgment may, pending an appeal therefrom, be

amended in the court which pronounced it, if the circumstances are such as to warrant the amendment, if no appeal had been taken."

Certainly, the circumstances that the trial court had concluded that the testimony was not sufficient to sustain the conviction would appear, not only to justify, but to require, the trial court to grant a new trial, and the general power of the court to set aside a judgment of conviction at the term at which it was rendered, when its execution has not been entered upon, ought not to be questioned.

However, it was said in the case of *Union Sawmill Co.* v. *Langley,* 188 Ark. 316, 66 S. W. 2d 300, that "We have repeatedly held that, during the term of court at which a judgment is rendered, the court has the inherent power to set aside the judgment, and it may do so without stating any cause."

Here, the court has stated the cause which induced that action.

It was held in the case of *Blackwood* v. *Eads,* 98 Ark. 304, 135 S. W. 922, to quote a headnote in that case, that "Trial courts have large discretion in the matter of granting new trials, especially upon the weight of the evidence, and the Supreme Court will not interfere with such discretion unless it be made to appear that it was improvidently exercised."

Certainly, it was not an improvident exercise of the power to grant a new trial when the court concludes that the testimony was not sufficient to sustain the conviction.

In the case of *Foohs* v. *Bilby,* 95 Ark. 302, 129 S. W. 1104, it was held, to quote a headnote in that case, that "The fact that a party against whom a judgment has been rendered in the circuit court took an appeal therefrom and that the judgment was affirmed on appeal will not preclude such party from applying, under Kirby's Digest, § 4431, subdiv. 7, to the circuit court at a subsequent term to vacate the judgment for unavoidable casualty which prevented the party from appearing at the trial."

In that case, as the headnote copied reflects, there had been, not only an appeal from a judgment, but the judgment had been affirmed, yet it was held that pursuant to the statutory power the trial court might grant a new trial for an unavoidable casualty. Here, the court was not acting pursuant to a statutory power, but under its inherent power to correct its judgment at any time during the term at which it was rendered, before any part of the sentence or judgment had been executed. It is unimportant whether the court, in a particular case, derives the power to vacate the judgment from the statute, or has that power inherently. Courts may exercise their jurisdiction in either case.

What better example of the harm which may follow from attempting to interfere with, or control, the discretion of trial courts could be found than is presented in the instant case? Here, the trial court, which is not restricted, as we are, to a mere determination of the legal sufficiency of the testimony, has found that the testimony does not sustain the conviction, and that finding was made, as has been several times herein said, at the term at which the trial and conviction were had. The majority ignore that finding, because it was not made until after appellant had appealed to this court for relief. To so hold, in my opinion, is to let technicality go to seed. Justice has obviously miscarried, and this result has been accomplished without necessity or reason therefor. If any rule of practice required that result, it should be changed, but, as I have attempted to show, we have no such rule of practice. If relief cannot otherwise be granted, we should, of our own motion, dismiss this appeal.

Consider the effect of the majority opinion. We have affirmed the sentence. That certainly is jeopardy. Appellant must serve a sentence for a crime which the trial court found he was not shown to have committed, Only the pardoning power of the Governor may now save him. On the other hand, if he should be pardoned, he may not again be tried, although he is, in fact, guilty, because, as a result of our action, and not that of the trial court, he has been placed in jeopardy. How much better would it

388

be to preserve the orderly and usual course of respecting the judgment of the trial court, no part of the sentence having been executed?

I, therefore, very respectfully dissent, and am authorized to say that Justice HOLT concurs in the views here expressed.