MURPHY v. MURPHY.

4-5857 and 4-5995                    140 S. W. 2d 416

Opinion delivered April 22, 1940.

*William R. McGuire, Roy J. Wood* and *Reid & Evrard,* for appellant Hanorah Murphy.

*Claude W. McElwee* and *W. Leon Smith,* for appellant Beatrice M. C. Murphy.

SMITH, J. Hanorah and Frank J. Murphy were married in St. Louis, Missouri, in 1908, and lived together in that city until 1927, when the husband filed a suit for divorce, and alleged indignities on the part of his wife towards him as ground therefor. An answer was filed denying this allegation, and the suit was dismissed in March, 1938, for want of prosecution.

Thereafter the parties lived separate and apart in the city of St. Louis, but each knew the other's address. On December 28, 1938, Murphy filed, in the chancery court of Mississippi county, Chickasawba district, a second suit for divorce, in which he again alleged indignities to him on the part of his wife as ground of divorce.

The complaint also alleged more than three years' separation.

It was attempted to secure service by the publication of a warning order upon the affidavit of the plaintiff to the effect that the defendant was a non-resident of the State of Arkansas, and an attorney was appointed to notify the defendant of the pendency of the suit and to make report thereof. The attorney filed a report, in which he stated that he had addressed a letter to Mrs. Murphy at No. 1460 Sproule Avenue, St. Louis, which letter had been returned to him unopened. He attached the letter to his report. It is admitted that plaintiff furnished this address, and it is admitted also that he knew this was not the address of his wife. Plaintiff explained that this was an inadvertence, the address furnished being his own former—but not then his correct address. His wife had never lived at that address.

The cause was heard on depositions, and a decree of divorce was granted February 27, 1939, and on March 11, 1939, Murphy married Beatrice Marie Cornwell.

In a proceeding brought to vacate this decree, Mrs. Hanorah Murphy testified that at the time of its rendition and for two years prior thereto she had resided at No. 5032 Aubert Avenue, St. Louis, a fact well-known to her husband, to which address he had directed letters each month containing check for her monthly allowance of $75, which she received each month until March, 1939. She testified that she had been a dutiful wife, and had given her husband no cause for divorce, and on numerous occasions had urged him to return to her home. Her first information that she had been sued for a divorce was contained in a letter from her husband enclosing the March remittance of $75, in which letter he informed her that he had obtained a divorce. Her husband refused to advise her where or when he had obtained a divorce, as did also Marvin E. Boisseau, an attorney, who had filed the suit for divorce for the husband in St. Louis, previously referred to, and whose deposition was read in evidence when the decree in this state was granted. She thereupon filed suit in St. Louis for a divorce, upon the ground of desertion, and it was only when her husband's

answer was filed to that suit that she learned when and where he had obtained a divorce in this state. She immediately filed in the Mississippi chancery court a motion to vacate that decree.

The second wife filed an intervention in that suit, alleging her marriage to Frank J. Murphy, and she joined with him in a prayer that the motion to vacate the decree be denied. The court refused, on September 26, 1939, to vacate the decree, from which order and decree Mrs. Hanorah Murphy prayed and was granted an appeal to the Supreme Court, which was perfected November 17, 1939.

Later, on January 29, 1940, another decree was rendered, which recites a continuation of the term of the court at which the decree of September 26, 1939, had been rendered. In this last decree it is recited that, upon a reconsideration of the evidence the court finds that the decree of September 26, 1939, was erroneous and should be set aside, for the reason that it was based upon the erroneous finding that, during the pendency of this proceeding and prior to February 27, 1939 (the date of the decree of divorce), the plaintiff, Frank J. Murphy, was a *bona fide* resident of the Chickasawba district of Mississippi county, Arkansas.

The decree of January 29, 1940, further recited that "Upon such reconsideration of the evidence in this cause, the court further finds that during the period from December 28, 1938, (at which date the divorce suit was filed) until February 27, 1939, (on which date the decree for divorce was rendered), the plaintiff, Frank J. Murphy, was not at any time during said period, nor at any other period an actual *bona fide* resident of the Chickasawba district of Mississippi county, nor of the State of Arkansas, at all, and the court, therefore, finds that this court was without jurisdiction to render the decree of divorce which it attempted to render in this cause under date of February 27, 1939, and that said purported divorce was and is, therefore, absolutely null and void, and without effect for want of jurisdiction of the court to render the same."

Upon the rendition of this last decree, Mrs. Beatrice M. C. Murphy filed here her petition for writ of certiorari to the clerk of the chancery court of the Chickasawba district of Mississippi county, in which she recited the facts herein stated, and prayed that the last decree be quashed, for the reason that, at the time of its rendition, the Mississippi chancery court had lost jurisdiction of the cause through the appeal thereof to this court, which had then been perfected.

To begin unraveling this case, it may first be said that the last-mentioned decree, rendered January 29, 1940, was void, for the reason that, at the time of its rendition, the cause had been appealed to and was then pending in this court. Thereafter the jurisdiction was here, and not there, and the chancery court was without jurisdiction to make any further orders in regard to the divorce. Such is the effect of the opinion in *Fletcher* v. *State,* 198 Ark. 376, 128 S. W. 2d 997, and the cases there cited.

However, this decree of January 29, 1940, reflects the finding of fact that Murphy had not become a resident of this state when he filed his suit, in which finding we fully concur. He was in and out of Blytheville, in the Chickasawba district of Mississippi county, for a day or two at a time during the period between the date when he says he became a resident of this state and the date of the rendition of the decree for a divorce. But during this period he registered and voted in St. Louis as a resident of that city, and, altogether, he spent only a small portion of his time during the required ninety-day period in this state.

We said in the case of *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242, that our divorce law did not mean that the plaintiff should not, at any time during the three months' residence, leave the state for any purpose, and that he may reside here as would any other resident, but during all this three months' period he must be a resident of this state, and not of some other, and that the act does not contemplate that one may come into this state, pay three months' board, leave the state, and then return to prosecute his suit upon the theory that he has

resided in the state for three months. It does not appear that Murphy did even this. During this ninety-day period he was employed as a traveling salesman, covering a territory far removed from this state, and when in the state at all it was only as a transient, staying a day or two at a time.

Murphy was, therefore, never a resident of this state, and, as the court below properly found, a fraud was practiced upon the court in procuring the divorce in this state.

However, as has been said, the court had lost jurisdiction of the cause when the decree was rendered setting aside the divorce decree, but even so, the appeal of Mrs. Hanorah Murphy from the decree refusing to vacate the divorce is before us for our review.

This decree must be reversed, for two reasons, the first being that Murphy was not a resident of this state when he obtained the divorce, and the representation that he was a resident of the state constituted a fraud practiced upon the court.

Another fraud more subtle and, therefore, more egregious was his action in giving an improper address as the place of his wife's residence. This prevented her from knowing that she had been sued until after she had been divorced. Such frauds will not be tolerated. Our ninety-day divorce law has been frequently upheld by this court as not being beyond the power of the General Assembly to enact. But if the trial courts are not careful in its administration—as they should be—to see that the service which the law requires has been secured, rank injustice may be done in many cases.

Here, the naked truth is that a man who never, even for ninety days, became a resident of this state, gave an improper address, which made it impossible to notify his wife that she had been sued, and she remained in ignorance of that fact until after she had been divorced. Such divorces have a "mail-order" appearance, and we shall not hesitate to set them aside, even though the divorced party shall have remarried before we have that opportunity; and, however innocent the second wife may be, we

cannot permit such frauds to be practiced upon the courts of this state.

At § 469 of the chapter on Divorce and Separation in 17 American Jurisprudence, p. 384, it is said that "Divorce decrees may be set aside because of fraud even though the rights of innocent third persons are thereby prejudiced, and hence, the petition need not allege that no such rights have intervened."

A similar statement of the law appears in the chapter on Divorce in 19 C. J., § 415, p. 166, where many cases are collected, among others our own case of *Stewart* v. *Stewart*, 101 Ark. 86, 141 S. W. 193.

In the case last cited it was said: "It appears, from the allegations of the petition and the record in the case, that, though appellant well-knew appellee's address in Topeka and of her ignorance of the pendency of the suit, he failed to impart this information to the attorney appointed by the court and rested upon the latter's report that he had been unable to ascertain appellee's whereabouts so as to notify her. This, if true, was equivalent to suppressing information to which appellee was entitled. It was appellant's duty to the court to see that his wife was notified of the pendency of the suit if he was aware of her situation. Appellant's conduct, we think, if established as set forth in the petition, amounted to such fraud as would justify the court in setting aside the decree. *Womack* v. *Womack*, 73 Ark. 281, 83 S. W. 937, 1136; *Johnson* v. *Coleman*, 23 Wis. 452, 99 Am. Dec. 193."

It was held in the case of *Womack* v. *Womack*, 73 Ark. 281, 83 S. W. 937, 1136, that, as a condition precedent to the maintenance of a suit to vacate a decree for divorce on the ground of fraud in its procurement, it must be adjudged that there was a valid defense to the original suit. The testimony of Mrs. Hanorah Murphy shows a valid defense to the suit. But in the case of *Corney* v. *Corney*, 79 Ark. 289, 95 S. W. 135, 116 Am. St. Rep. 80, it was held (to quote a headnote) that "Where a decree was obtained by a fraud upon the court's jurisdiction, as where a divorce suit was brought

in another county than that of plaintiff's residence, a suit will lie to vacate such decree after term, whether there was a valid defense to the original suit or not."

It follows, from what has been said, that the divorce decree must be reversed, and, as the court was without jurisdiction, the cause will be remanded with directions to dismiss it.

SMITH, J. (on rehearing). We are asked to grant a rehearing in this case upon the ground that the action of appellant Hanorah Murphy in notifying the clerk of this court that she was no longer interested in the appeal constituted an abandonment of it, and for the reason also that the action of appellant Mrs. Murphy in obtaining a divorce in St. Louis pending the appeal operated to dismiss her appeal, and that it should even now be dismissed for these reasons.

A motion to dismiss the appeal was filed for these two reasons before the submission of the cause, but a response to this motion was filed denying its allegations, and no proof of the truth thereof was offered. There was no evidence before us that appellant, Mrs. Murphy, had obtained a divorce pending her appeal, nor was there any evidence that she had notified the clerk of this court that she was no longer interested in the appeal and did not intend to prosecute it and our clerk denies that he was so notified. On the contrary, she did prosecute the appeal with due diligence and to a successful conclusion.

We now have filed with the petition for rehearing evidence of the fact that appellant, Mrs. Murphy, did obtain a divorce in St. Louis pending her appeal; but, as has been said, there was no evidence of that fact before us when the cause was submitted and decided.

Rule III of this court, and the practice under it, does not permit a party to try his case in this piecemeal fashion. He must present all his defenses, or such as he relies upon, when the case is submitted for our decision, and he waives those which he does not present. Rule III provides that in no case will a petition for

rehearing be granted "when based on any fact thought to be overlooked by the court unless reference has been clearly made to the same in the abstract of the transcript as provided by Rules IX and X." Here, there could have been no reference to the fact that appellant, Mrs. Murphy, had been divorced pending her appeal, as the transcript contained no evidence of that fact.

The parties to this litigation—all of them—appear to have been trifling with the jurisdiction of our courts, and we know nothing to do with them except to spew them out and to have done with them; and to leave them where they were, so far as we are concerned, when the jurisdiction of our courts was first invoked.

The petition for rehearing is, therefore, denied.