## WILLIAMS v. STATE.

Opinion delivered April 21, 1924.

1. CRIMINAL LAW—RIGHT OF DEFENDANT TO CONDUCT DEFENSE.— Where a defendant is mentally capable of acting for himself, and elects to conduct his own defense without an attorney to represent him, it was not error to permit him to do so.

2. CRIMINAL LAW—PERMITTING AN INCOMPETENT TO GO TO TRIAL
   WITHOUT COUNSEL.—Where the evidence in a criminal case clearly
   presented the issue as to defendant's sanity, it was error to permit
   the defendant to go to trial without counsel, and such objection
   could be raised for the first time in a motion for new trial.

Appeal from Hot Spring Circuit Court; *T. E. Toler,* Judge; reversed.

*D. E. Waddell,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McCULLOCH, C. J.   Appellant was indicted by the grand jury of Hot Spring County for the crime of assault with intent to kill, committed by firing pistol shots and wounding his father, J. M. Williams, with felonious intent to kill and murder; and, on the trial of the cause, appellant was convicted of assault with intent to kill, and his punishment was fixed at a term of three years in the State Penitentiary.

Appellant was not represented by counsel during the trial, but, after the conclusion of the trial, a motion for a new trial was filed by an attorney who had been appointed by the court, prior to the trial, to represent appellant, and who had not acted in that capacity because of appellant's election to conduct his own defense.   The motion thus filed by the attorney set up as grounds that the verdict was not supported by sufficient evidence, and that the court erred "in putting the defendant to trial without legal counsel."

The indictment was returned by the grand jury on July 20, 1923, and the offense was alleged to have been committed on April 22, 1923.  The case was tried on an adjourned day of the July term on November 17, 1923.

It appears from the record that, prior to the day of trial, the court appointed a member of the Saline County bar to represent appellant, but, when the case was called for trial, the attorney so appointed failed to make his appearance, and the court then appointed Mr. Waddell, a member of the Hot Spring County bar.   The record recites that Mr. Waddell informed the court, upon his

appointment, that he "did not feel that he was in a position to properly represent said defendant on such short notice," and that the court thereupon offered to give appellant more time to select counsel, but that appellant asked "to proceed in the trial without an attorney," which was done, defendant representing himself. After the trial, Mr. Waddell, as before stated, filed a motion for a new trial.

The State introduced only one witness, appellant's father, on whom the assault was committed. The witness is a practicing physician at Malvern, the county seat of Hot Spring County, and he testified that his son, the appellant, fired two shots at him, one of which struck him in the arm and the other in the back, and he detailed the circumstances under which appellant fired the shots. It appears from his testimony that appellant had been addicted to the use of morphine for many years, and, on the night the offense was committed, at about the hour of twelve-thirty, appellant came to the room of witness with a pistol in his hand, and demanded of witness a hypodermic syringe and morphine, which witness gave him, under threat. He testified that, at a later hour, after appellant had used the drug, his wife, the mother of appellant, went into the room and got the syringe and returned it to witness; that, early in the morning, witness went into the room and tried to get the gun away from appellant, as he knew that he was in a dangerous mental condition. Witness testified that, when he opened the door, he saw appellant standing at a trunk, and asked him about the syringe. The statement of the witness as to what transpired then was as follows: "When I asked about my syringe he cast his eyes up, with a hideous and vicious expression, and said, 'Your damned old syringe is out in the hall, broken.' I did not see any gun in his hand. He made about two steps forward toward me, and fired a shot, which struck me in my right arm. I immediately turned and he fired again, the bullet striking me in the back." Witness testified that appellant's mind first became affected by the use of alcohol during

the year 1912, and that in that year he lost his mind, and was committed to the Hospital for Nervous Diseases, in Little Rock, and remained there for treatment about five months; that, in the year 1920, appellant began drinking and using morphine, and became violently insane, and was again committed to the insane asylum, and remained there six or eight months; that, in February, 1922, appellant was again committed to the asylum in Little Rock, and remained there five or six months; that, after the commission of this offense, appellant was confined in jail at Malvern, and was violently insane, and was again committed to the asylum, but had been later discharged. Dr. Williams was recalled by the court and was asked to tell what the condition of appellant's mind was at the time he committed the offense, and the witness answered as follows:

"The boy's mind had never been right since he was committed in 1912 in the insane asylum. At times, when he could be gotten out from under the influence of liquor and opiates, he would seemingly be normal. Periodic spells would come on him, when he would do or say things for which I do not think he was responsible, and at times would become violent. This gradually grew worse on him. I regarded him as being violently insane, and not mentally responsible for his acts. After the sheriff came and took charge of him I told him not to harm him or ill treat him, for he was not mentally responsible for what he had done."

Appellant took the witness stand in his own behalf, and admitted that he shot his father, and that he did so for the reason that his "father had been drinking, and had not been treating his mother right." His statement admitting the shooting was as follows: "I shot my father, as he has testified to here. They thought I was crazy, but I am not; I have a certificate showing that I have been discharged from the Hospital for Nervous Diseases." Appellant then called as a witness the sheriff of the county, who testified about arresting appellant and keeping him in jail, and thence carrying him to the

Hospital for Nervous Diseases at Little Rock. The sheriff testified that appellant "seemed to be of a vicious nature," and that he had to use force in handling him and carrying him to the asylum. A question propounded by appellant and answered by the witness was as follows:

"Q. Mr. Fisher, didn't I tell you that my father had been drinking, and that you had better come and get him? A. No, John, you didn't tell me that. I don't know anything about Dr. Williams drinking at any time, and I know John never said anything to me about it at any time."

Appellant called another witness, a servant in the family, who testified that she had seen Dr. Williams drinking and under the influence of whiskey, but had never seen him mistreat his wife in any way. Another witness called testified that Dr. Williams was not drinking.

The court gave three instructions, one on the substantive law as to the crime charged in the indictment, another on the subject of reasonable doubt, and a third on the subject of the duty and province of the jury in weighing the evidence. The court also gave three instructions, at the request of appellant, all of them relating to the subject of reasonable doubt. The question of appellant's sanity at the time of the commission of the offense was not submitted to the jury.

If, at the time of the trial, appellant was mentally capable of acting for himself, there was no error committed by the court in permitting him to go to trial without an attorney to represent him. If, under those circumstances, he preferred to conduct his own defense rather than to await the convenience of the appointed attorney, the court was not bound to force the services of an attorney upon him or to postpone the case. In dealing with this question in a recent case, we said: "He has the right, if he so elects, to conduct his own defense, but he does not thereby become absolved from the duty of observing the rules of practice designed to promote the orderly administration of the law. Appellant should

therefore have made objection to such rulings of the court below as he cared to have reviewed by this court, and, as he made no objection to anything that occurred at his trial, there is presented for our review only such questions as can be raised without objection first being made in the court below.'' *Williams* v. *State*, 153 Ark. 289. The case from which the above quotation is taken was one where the question of the mental capacity of the acused was not involved.

The assignment of error with respect to the court permitting the accused to go to trial without counsel could easily be disposed of on the ground that proper objection had not been made so as to call for a ruling of the court, if the question of appellant's mental condition did not present itself; but, that question being obviously presented, we must treat this assignment in the motion for a new trial as sufficiently raising the question whether or not the court erred in ordering the trial to proceed upon appellant's own election to conduct his own defense. There was abundant evidence to show that appellant was not only mentally incapacitated at the time of the commission of the offense, but also at the time of the trial. It is unnecessary for us to discuss the weight of the testimony further than to say that there are grounds for believing that appellant was not mentally capable at either of those times—that is sufficiently made to appear by the evidence brought forward in the bill of exceptions. Under those circumstances, the court should not have permitted the trial of appellant to proceed without counsel. The assignment of error in the motion for a new trial sufficiently indicates that the error was in permitting the trial to proceed without appellant having counsel to act for him while his mental condition was in doubt. We are at liberty to examine the evidence adduced at the trial for the purpose of determining whether or not the court, after hearing that evidence, should have ordered a new trial so that appellant could have the benefit of counsel. Notwithstanding the affirmative evidence coming from the State's only witness tending strongly

to show that appellant was insane at the time of the commission of the offense, this question was not submitted to the jury at all—no instructions were asked or given on that subject, and the case went to the jury solely on the question of the guilt or innocence of the accused, irrespective of his mental condition. Even if the appearance of appellant indicated to the court, at the time he permitted the trial to begin, that appellant was of sufficient mental capacity to conduct his own defense, we are of the opinion that, after the testimony was adduced in the case and the attorney subsequently appeared for the appellant and asked for a new trial, the court should have granted it.

The judgment is therefore reversed, and the cause is remanded for a new trial.