## HOYT HOWINGTON v. STATE.

No. A-5009. 'Opinion Filed May 6, 1925.
(235 Pac. 931.)

(Syllabus.)

1. **Trial—Court's Duty to See that Accused Gets Fair and Impartial Trial.** Every person charged with crime, whether guilty or innocent, is entitled to a fair and impartial trial according to the due and orderly course of the law, and it is a duty resting upon the courts to see that the guaranty of such a trial, conferred by the laws upon every citizen, shall be upheld and sustained.

2. **Trial—Jury—Waiver of Rights to Trial by Jury, to be Heard by Counsel, etc.** A person prosecuted for a crime may waive the rights guaranteed to him by Bill of Rights, relating to trial by jury, right to be heard by counsel, etc.

3. **Trial—Right to Consult with Counsel and be Fully Advised Before Pleading.** Under Bill of Rights, § 20, an accused has the right to consult with counsel and to be fully advised as to his rights, and, as to the consequences of his act before entering his plea to the indictment or information.

4. **Arraignment and Pleas—Permission to Withdraw Plea of Guilty Within Sound Discretion of Court.** The granting or denying of permission to withdraw a plea of guilty either before or after judgment, and to substitute a plea of not guilty, is a matter within the sound discretion of the trial court. In capital cases such discretion should be liberally exercised in favor of life and liberty.

5. **Same—Plea of Guilty not to be Accepted until Accused Fully Advised by Court of His Rights and Consequences of Plea.** A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea.

6. **Appeal and Error—Reversal for Denial of Constitutional Right Unless Right Waived, or Error Harmless.** Where it appears on appeal that a defendant has been denied a right guaranteed by the Constitution, such showing requires a reversal, unless the record clearly shows that the right was waived, or that no injury could have resulted to the accused by reason of such denial.

7. **Arraignment and Pleas—Prerequisites to Accepting Plea of Guilty of Capital Offense by Accused Without Counsel.** Where a defendant charged with a capital offense appears before the court

without counsel and offers to enter a plea of guilty, the court before accepting such plea should make sure that the defendant has full knowledge of his rights, and that he fully comprehends the serious consequences of the plea which he is proposing to enter.

8. **Same—Plea of Guilty of Murder in First Degree Held not Made Voluntarily with Full Knowledge of Consequences.** Where one accused of murder in the first degree was arraigned without counsel, and court did not inform him that in case he was tried by a jury and found guilty of murder, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life, and that by pleading guilty he waived the right to have a jury exercise its jurisdiction as to that matter, it cannot be said that a plea of guilty then entered was voluntary or with full and perfect knowledge of the consequences.

9. **Trial—Prosecuting Attorneys' Duty to See that Accused not Deprived of Constitutional Rights.** It is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his constitutional rights as it is to prosecute him for the crime with which he is charged.

Appeal from District Court, Oklahoma County; James I. Phelps, Judge.

Hoyt Howington pleaded guilty to a charge of murder and was sentenced to suffer death. From the judgment, he appeals. Reversed, with instructions.

E. J. Giddings, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment of conviction for murder and sentence of death pronounced upon a plea of guilty entered by the defendant, Hoyt Howington, upon his arraignment on an information charging him with the murder of one Jack King. It appears from the record that the homicide was committed in Oklahoma City, January 20, 1924, about 11 p. m.; that defendant was arrested the next evening about 7 p. m. The next day complaint was filed against him before a justice of the

peace. Thereupon defendant waived preliminary examination and was held to the district court. On the same day the information was filed in the district court, and the defendant was brought into court. Upon his arraignment the following colloquy occurred between him and the court:

"Do you desire to have a lawyer to represent you?

"The Defendant: No. sir; I will just plead guilty.

"The Court: Do you understand fully the nature and consequence of your act in entering a plea of guilty for the crime of murder? And do you fully understand that it will be necessary for the court to send you to the penitentiary for life or sentence you to death in the electric chair if you enter a plea of guilty?

"The Defendant: Yes, sir.

"The Court: And fully understanding that, then you desire to enter a plea of guilty?

"The Defendant: Yes, sir.

"The Court: Are you making this plea of guilty as your own free and voluntary act and deed?

"The Defendant: Yes, sir; and throw myself on the mercy of the court.

"The Court (to court clerk): Let a plea of guilty be entered.

"The Court: It now becomes the court's unpleasant duty to try to decide either to sentence you to the penitentiary for life or give you the electric chair, and I would like to hear any statement you desire to make.

"The Defendant: I will just say this, that I will ask for the mercy of the court; that the court ought to give me a chance; that when I done this, I was drinking; and that's all.

"The Court: You killed this man for the purpose of robbing him, did you?

"The Defendant: No, sir; I didn't aim to kill him.

"The Court: Well, you went in there to rob him and killed him because he was resisting.

"The Defendant:   To keep him from killing me.

"The Court: I have read this statement you have made and the county attorney has just handed me."

It appears from the statement handed to the court by the county attorney that defendant's age was 20 years and 6 months; that his mother died when he was 6 weeks old, and his father died when he was 2 years old; that one of his uncles kept him until he was 11 years old; that his grandfather kept him until he was 13 years old; that he never went to school; that the only time he was ever before arrested was at Sherman, Tex., by a police officer on a minor charge.

The court pronounced judgment, concluding as follows:

"It is the judgment and sentence of this court that you be taken from the bar of this court to the county jail, and the sheriff of this county be directed, within 10 days, to convey you to the state penitentiary at McAlester, and that the warden of the penitentiary will be directed to execute the sentence of death in the electric chair on you on April 4, 1924.

"You are notified by this court that you have a right to appeal to the Criminal Court of Appeals from this judgment and sentence of the court, and that the court will at this time appoint Cody Fowler and Clarence Mills to appeal the case for you to the Criminal Court of Appeals."

On the following day, Janury 23d, E. J. Giddings, Esq., appearing for defendant, filed a motion to vacate and set aside the judgment and for leave to withdraw the plea of guilty and to enter a plea of not guilty, for the following reasons:

"That the judgment is illegal and not rendered according to law; that defendant is a minor, of the age of

20 years, and was told that he would get 15 or 20 years and no more, if he pleaded guilty, and that he could not have a lawyer before he entered his plea; that he did not have the benefit and privilege of counsel, and was not apprised of his legal rights, and did not waive his statutory time for judgment and sentence; that he is entitled to enter a plea of not guilty, because he could not be legally sentenced until two full days after said plea had been entered.

"Wherefore he moves the court to permit him to withdraw his plea of guilty and enter a plea of not guilty herein, and to grant him a jury trial, for the reason that his rights under the Constitution and laws of the state of Oklahoma have been violated in the imposition of said judgment and sentence."

The motion to set aside the judgment and application for leave to withdraw his plea of guilty coming on to be heard, the court ruled as follows:

"I would a thousand times rather this young man would have had a trial by a jury; but I feel that when he was arraigned in this court, that he was properly advised of his rights, and I am sure that he fully understood the nature and the consequences of his act; not like an immature child, but he stated, at the time, he was within a few months of twenty-one (21) years of age; that he desired no counsel, and insisted on entering a plea of guilty after the court had informed him it would be necessary for the court to either sentence him to the electric chair or to life imprisonment, and after being thus admonished, he still insisted on entering a plea of guilty. I was thoroughly convinced that he understood the gravity of the situation at that time, and I have seen nothing to change my mind about it since then, and merely because the court felt like inflicting a more severe penalty than the young man had hoped that he might receive, to my mind, is no reason or excuse for coming in, at this time, and asking for that sentence to be set aside, I mean, reason or excuse in law. In order to safeguard his rights, this court appointed counsel to appeal his case to the Criminal Court of Appeals. Since that time, he, or some one for him, has employed counsel to

appeal from the decision of this court inflicting the death penalty, to the Criminal Court of Appeals. The law makes it this court's duty to file a transcript of all of these proceedings with the Governor, and it makes it the Governor's duty, if he desires, to call on the Criminal Court of Appeals for an opinion. And, safeguarding every right that the defendant has, it was the desire of this court, at the time he was sentenced, that his rights be thus safeguarded. I still want to say that his rights are safeguarded; if, within the discretion or the judgment of the Criminal Court of Appeals or the Governor that this young man should not suffer the penalty inflicted by this court, why, it is within their power and authority and duty to dispose of it otherwise; but, under all the circumstances shown, as unpleasant a duty as it has been, this court's conscience is absolutely clear as to the procedure that followed.

"The motion will be overruled and exception allowed."

In support of the contention of counsel for defendant that the judgment should be reversed and a new trial ordered, the errors assigned are in substance that the court was without jurisdiction to render said judgment; that the defendant was denied the rights guaranteed by the Constitution of the state; that the court erred in not appointing a time for pronouncing judgment as required by law; that the court abused its discretion in denying the defendant's motion to set aside the judgment, and in refusing to permit him to withdraw his plea of guilty.

We have given this case, because of its great importance, involving human life, patient and careful consideration, and we are convinced that the judgment of conviction should be set aside and a new trial awarded.

No more solemn duty can be imposed upon the courts than the duty of protecting, and the duty of taking, human life. When human life is to be taken under the judgment of a court, the act cannot be justified, ex-

cept by the strict observance of the forms of the law of the land.

No act which a court can be called upon to perform is more grave and solemn than to pronounce judgment and sentence upon a plea of guilty in a capital case. In such cases "judges ought as far as the law permitteth in justice to remember mercy."

The uniform holding of the courts is that, in capital cases, a plea of guilty can only be entered after the defendant has been fully advised by the court of his rights and the consequences of his plea, and, where it appears on appeal from a judgment of conviction that the defendant has been denied a right guaranteed by the Constitution, such showing requires a reversal, unless the record clearly shows that the right was waived, or that no injury could have resulted to the accused by reason of such denial.

A denial of a constitutional right to a person prosecuted for a crime is prima facie prejudicial.

Section 20 of the Bill of Rights provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post office addresses."

In cases of this kind, where the defendant is charged with a capital offense, he should have the advantage of every right which the law secures to him upon his trial. A fair and impartial administration of justice is one of the most sacred rights of the citizen, and it is the duty of the courts to see that the constitutional rights of the accused shall not be violated; however guilty he may be, he is entitled to a fair trial according to the due and orderly course of the law.

A person prosecuted for a crime may waive the rights guaranteed to him by this provision of the Constitution, and the first question presented is whether, under the fact shown in this case, the defendant did or did not waive such rights.

Where it appears that a defendant has been fully advised as to his rights and as to the consequences of his plea, that with such knowledge he deliberately enters a plea of guilty, the court is justified in accepting it, even in a capital case. But where a defendant charged with a capital offense appears before the court without counsel, and offer to enter a plea of guilty, the court before accepting such plea should make sure that defendant has full knowledge of his rights, and that he fully comprehends and appreciates the serious consequences of the plea he is proposing to enter. Polk v. State, 26 Okla. Cr. 283, 224 P. 194.

The record does not show that this defendant was at any time furnished with a list of the witnesses to be called in chief to prove the allegations of the information together with their post office addresses, or that he was served with a copy of the information, nor does the record show that the defendant waived these constitutional rights.

It is well settled that under this provision of the Constitution the defendant in a capital case does not

have to demand a list of the witnesses to be called in chief, because the Constitution makes the demand for him, and the trial court is without authority to force him to trial until this provision has been complied with, unless the defendant has waived this right. State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091; Spess v. State, 13 Okla. Cr. 277, 164 P. 131; Goben v. State, 20 Okla. Cr. 220, 201 P. 812.

The state attempts to safeguard the life and liberty of citizens, and as one of the steps in that direction secures to them, if prosecuted for crime the constitutional right to be heard by counsel, which includes the right of accused to consult with counsel at every stage of the proceedings, whether imprisoned or admitted to bail. Mullen v. State, 28 Okla. Cr. 218, 230 P. 285.

The statute provides that where it appears that the defendant has no means and is unable to employ counsel, the court shall in all such cases appoint counsel, to represent him. Section 2929, C. S. 1921. There can be little doubt, under the facts in this case, that the defendant was denied the right to be heard by counsel as guaranteed by the letter and the spirit of our state Constitution. There is nothing to show that the defendant waived this right. At the time he was brought before the court and arraigned, he had been given no opportunity to be advised by counsel as to his rights, or as to the consequences of any plea he might enter. The judge of the court asked him if he desired to have a lawyer, but the court did not tell him that he had a right to have an attorney, and the court did not inquire as to what means the defendant possessed by which he could employ a lawyer, and did not inform him that it was the duty of the court to appoint an attorney to appear for him in case he possessed no means to employ one. And the court did not direct any officer of the court to call a lawyer to consult with

him, and made no offer to appoint an attorney for that purpose.

Under the facts stated, the defendant cannot be held to have waived his constitutional right to be heard by counsel. If the defendant had been permitted to consult with counsel learned in the law before he was arraigned, he would have been informed as to his constitutional and statutory rights, and he would have been informed that he had a right to be tried by a jury of 12 men, whose duty it would be to decide the question of his guilt; that in case he was tried by a jury and found guilty of murder, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life. He would have been told that he could not be required to give evidence against himself either as tending to show that he was guilty of the offense charged or as tending to show any aggravating circumstances to be considered in fixing his punishment. He would have been informed, also, that in case he pleaded guilty, such plea would be a judicial confession that he was guilty of murder and a waiver of his right to a trial by jury, and that the court would be authorized on that plea to find him guilty of murder without hearing other evidence. Mullen v. State, supra.

Under the facts in this case, the court had no right to assume that the defendant was fully advised as to his rights, and as to the consequences of a plea of guilty. The defendant was young, ignorant and inexperienced. Under such circumstances, the court was required to use caution in proportion to the gravity of the consequences.

Greenleaf on Evidence, vol. 1, par. 216, states the rule on this subject which is generally followed by the courts:

"Confessions are divided into two classes, namely, judicial and extrajudicial. Judicial confessions are

those that are made before the magistrate or in court, in the due course of legal proceedings; and it is essential that they be made of the free will of the party, and with full and perfect knowledge of the nature and consequences of the confession. Of this kind are the preliminary examinations, taken in writing by the magistrate, pursuant to statutes; and the plea of guilty made in open court, to an indictment. Either of these is sufficient to found a conviction, even if to be followed by a sentence of death, they being deliberately made, under the deepest solemnities, with the advice of counsel, and the protecting caution and oversight of the judge. Such was the rule of the Roman law, * * * and it may be deemed a rule of universal jurisprudence."

Under the facts as shown by the record, it cannot be said that the defendant voluntarily entered his plea of guilty understandingly, and it is shown beyond question that the consequences of a plea of guilty were not fully explained to the defendant before a plea was accepted.

The trial judge has like official responsibility to that of the judges of an appellate court, and every reasonable presumption must be indulged that he properly guarded the rights of the defendant. A consideration of the facts here presented, however, impels the conclusion that the trial court erred in its view of the law.

The Attorney General very properly declines to support the judgment and sentence in this case.

It may be well to say here that it is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his constitutional rights, as it is to prosecute him for the crime with which he is charged.

It will be observed that the judgment and sentence of death was pronounced in this case within 2 days from the commission of the homicide and within 24 hours following the arrest of the defendant.

"The law travels with a leaden heel, but strikes with

an iron hand," is a maxim pregnant with obvious meaning. In this instance, it doffed the "leaden heel," yet struck with the iron hand.

We do not deem it necessary to discuss other questions presented by the record, as they have been fully considered in two cases cited. Polk v. State and Mullen v. State.

Our conclusion is that the trial court should have granted the defendant's motion to vacate the judgment and should have permitted him to enter a plea of not guilty. In denying such motion, the court manifestly abused its discretion.

The judgment is reversed, with instructions to the trial court to set aside the judgment and allow the defendant to withdraw his plea of guilty and enter one of not guilty.

The warden of the penitentiary will surrender the defendant, Hoyt Howington, into the custody of the sheriff of Oklahoma county, who will keep him in custody pending further proceedings in the case.

BESSEY, P. J., and EDWARDS, J., concur.