No. 36,728

James Willey, *Petitioner*, v. R. H. Hudspeth, Warden of the Kansas State Penitentiary, *Respondent*.

(178 P. 2d 246)

Opinion filed March 8, 1947.

*Charles D. Stough,* of Lawrence, argued the cause and was on the briefs for the petitioner.

*Leon W. Lundblade,* assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, was with him on the briefs, for the respondent.

The opinion of the court was delivered by

Burch, J.: When the petitioner, James Willey, in this habeas corpus case was a seventeen-year-old boy, he and another boy were charged with breaking into and entering, in the nighttime, a grocery store in Pittsburg, Crawford county, Kansas, and with stealing therefrom various articles having an aggregate value of $25.25. The information, in two counts, charged the petitioner with being guilty of burglary in the second degree and of grand larceny. Such information was verified and filed on the 7th day of November, 1940, and on the same day the petitioner pleaded guilty to both crimes. On the next day the petitioner was "sentenced to confinement in the Kansas State Industrial Reformatory until discharged

by the board of corrections thereof, and not to exceed the maximum term of imprisonment provided by the statutes of said crime, to wit: ten years, until discharged according to law." The journal entry covering the proceeding at the time the petitioner entered his plea of guilty sets forth that the state was present by the county attorney and that the petitioner was present only in person. The journal entry recites also that the defendants were formally arraigned and entered a plea of guilty to the crimes and offenses and "Thereupon the defendants . . . were caused to stand before the court and asked by the court whether they had any legal or lawful cause to show why judgment and sentence of the court should not be pronounced against them upon their pleas of guilty herein, and no legal or lawful reason being alleged or shown . . . it is the judgment and sentence of this court that the defendants . . . be confined in the Kansas State Industrial Reformatory . . ." The journal entry does not disclose that the petitioner was asked whether he desired counsel or that any explanation was made to him as to his rights relative thereto.

The petition for a writ of habeas corpus filed in this case sets forth that the petitioner was denied his constitutional rights to have the assistance of counsel; that the court did not grant the petitioner the right to consultation of a counselor; that the petitioner did not desire to plead guilty as charged; that he did not waive the right of counsel, either orally or in writing; that he was coerced and intimidated by authorities and was unjustly held incommunicado from the date of his arrest on the 2d of November until the date he was sentenced on the 7th day of November and further that the respondent, who is the warden of the Kansas State Penitentiary at Lansing, has no authority to detain the petitioner in custody because he was sentenced to the reformatory and not to the penitentiary.

The answer of the respondent denies all of the allegations contained in the petition. In support of the answer several affidavits have been filed. One of them is the affidavit of Ben L. Humphreys, who was the county attorney of Crawford county at the time the petitioner pleaded guilty and was sentenced. Such affidavit specifically denies the statements of the petitioner as to his being coerced and intimidated by authorities and held incommunicado and declares that such statements are untrue; that the petitioner was not abused, coerced or threatened in any way for the purpose of causing him to plead guilty or to influence him in his actions; that

the plea of guilty was made voluntarily and that the petitioner was not induced by any threats or coercion by anyone. Such affidavit concludes by stating that the petitioner "did not at that time express any desire for counsel or intimate by any expression or action that he desired counsel to advise with him or represent him." In addition, the respondent has filed the affidavit of August Dorchy, who was the sheriff of Crawford county at the time the petitioner was awaiting trial. His affidavit also is to the effect that the petitioner was not threatened, coerced or influenced by the sheriff or by other officers in any way to plead guilty while the petitioner was in the custody of the sheriff. The contentions of the petitioner as to his being coerced or held incommunicado are not corroborated in any manner and consequently, we have no hesitancy in holding that he has not sustained the burden of proof required to establish that he was coerced into entering his plea or held incommunicado and that his petition cannot be allowed for such reasons. (See *Hill v. Hudspeth*, 161 Kan. 376, 168 P. 2d 922, and cases therein cited.)

Another ground asserted in support of the allowance of the writ relative to the prisoner being confined to the penitentiary rather than in the reformatory to which he was sentenced proves to be without merit. In support of the answer filed by the respondent by the office of the attorney general of the state, the abstract discloses that the petitioner in this case was paroled from the reformatory on Sepember 11, 1943, and on July 22, 1944, was declared delinquent because he had been convicted of another felony in Missouri and sentenced to the Missouri state reformatory and later transferred to the Missouri state penitentiary. From such institution he was given a conditional release on May 22, 1946, and was thereafter delivered to the Kansas state penitentiary. The transfer to the Kansas state penitentiary was made under the authority of G. S. 1935, 76-2314. The statute provides the power under which the transfer can be made and the petitioner has made no showing whatever which would justify our interfering with the action of the State Board of Administration in directing that the petitioner be transferred from the reformatory to the penitentiary. It follows that we cannot allow the writ for the reason last herein discussed.

The foregoing brings us to consideration of the serious question involved in the case: Should this seventeen-year-old boy have been given the benefit of counsel before he was permitted to enter his plea of guilty to the felony charges filed against him? We are not con-

cerned with the career of crime which the petitioner may have followed since he was first sent to the reformatory by the state of Kansas. We are gravely concerned, however, with the perplexing problem presented as to whether a seventeen-year-old boy should be permitted to enter a plea of guilty in a felony case without being required to confer with counsel. Counsel for the respondent call our attention to the fact that at the time the proceedings referred to herein occurred, G. S. 1935, 62-1304, was in effect, and as was said in *Hill v. Hudspeth,* supra, such statute only required that it was the duty of the court to assign counsel for an accused "at his request." Such counsel also state that this court has held a recital in a journal entry that an accused was without counsel is not the equivalent of showing that the accused was denied counsel. (*Garrison v. Amrine,* 155 Kan. 509, 126 P. 2d 228.) Respondent's counsel suggest also that the instant case should be governed by the reasoning followed in *Fairce v. Amrine,* 154 Kan. 618, 121 P. 2d 256, and *Hill v. Hudspeth,* supra. In such cases affidavits of the respective judges of the district courts were filed which, in substance, disclosed that it was always the custom of the judges, when an accused was brought into court charged with a felony, to inform the defendant fully of his constitutional rights and ask him if he had a lawyer, and if he had none the defendant was advised of his right to have one and that the court would appoint one for him. An affidavit to such effect was filed in this case by the Honorable L. M. Resler, who was judge of the district court in which the proceedings occurred. The affidavit, in addition to setting forth the foregoing, also states that it was the custom of the court to explain the charge in the information so that the accused would understand it and inform him what the penalty was. The affidavit contained the following statement, "All this (referring to the above custom) was done before defendant was asked to plead and I am positive this procedure was followed in this case." The assertion by the respondent that we have refused to issue a writ of habeas corpus under similar circumstances in the cited cases is correct. We have, but in none of the cited cases and in none which our research has disclosed, has this court approved the practice of permitting a seventeen-year-old boy to enter a plea of guilty to a felony without consulting with counsel. We do not question the information contained in the affidavit of the judge. The question still remains undecided, however, whether a court should always require that a seventeen-year-old boy consult with counsel. In justi-

fication of the action taken in the present case counsel for the respondent have filed a second affidavit of the Honorable L. M. Resler which, in substance, sets forth that upon reflection he recalls and remembers that when the petitioner entered his plea of guilty the father of the petitioner was present in the district courtroom at Pittsburg, Kan., and further that the father was also present when the petitioner was sentenced to the state reformatory. The affidavit continues by stating that "the affiant remembers and recalls that when the affiant left the bench, after the sentence of the said James Willey, that the said Floyd Willey (the father) talked to the affiant in the back of the courtroom about the sentence of James Willey (petitioner). That at no time during said conversation, nor at any other time, did said Floyd Willey, father of said James Willey, ever make any objection to this affiant about the plea or sentence of his son, James Willey."

The respondent suggests further that the showing relative to the father having been present mitigates, minimizes and negatives any possible imposition upon the petitioner's rights which may have arisen by reason of his being only seventeen years old at the time. It is submitted, in behalf of the respondent, that since the petitioner stood before the court, with his father in the courtroom, the father could have counseled with the petitioner and advised him of his rights; that therefore, the petitioner was in effect afforded the benefit of the mental capacities of a mature man and that consequently, there was no actual imposition upon the petitioner's rights merely because he was young and inexperienced at the time he entered his plea of guilty. There is no showing in this record, however, that the father did confer with his son about the entering of the plea. The father has filed an affidavit to the effect that he knew nothing about the matter. His affidavit, in part, reads as follows: "Your affiant further states that he was never notified, or informed through any channel that his son, James Willey, had been arrested, convicted, or committed to the Kansas State Industrial Reformatory until some time after the entire matter had transpired." If we assume, however, that the father was present at the time his son pleaded guilty and was sentenced, the question still remains unanswered whether the petitioner should have been required to confer with counsel. In other words, the court is of the opinion that the absence or presence of the petitioner's father in the courtroom should not, control determination of the proper answer to the question.

When the petitioner, as a boy only seventeen years of age, stood before the court, under the laws of this state he could not have entered into a valid contract obligating himself; he could not have voted; he could not have married without the consent of a parent; he could not alone, without a guardian or next friend, have been heard to say anything in the courtroom in a civil action which would have been binding upon him. Should we say, in such circumstances, that about the only thing he could have done alone, with legal significance, was to have pleaded guilty to a felony in a court of law? In the case of *State v. Oberst*, 127 Kan. 412, 273 Pac. 490, we said:

"It is part of our fundamental law that a person on trial for a crime is entitled to the assistance of counsel for his defense (Bill of Rights, § 10). This right is intended to be adequately secure by our penal code (R. S. 62-1304), and the same doctrine is as thoroughly emphasized in our criminal jurisprudence as any one matter treated in the 125 volumes which chronicle the judicial deliberations of this court." (p. 417.)

From the same opinion the following is quoted:

". . . In the case before us the defendant was a seventeen-year-old boy . . . The one thing this youngster needed more than anything else before pleading guilty to such a horrifying accusation was consultation with and the advice of a good lawyer . . ." (p. 419.)

The opinion continues:

" . . . It is suggested that there are many prisoners incarcerated in our penal institutions on pleas of guilty given without advice of counsel. We doubt that, and would be sorry indeed if it were true, particularly, if they are 17-year-old lads who without legal advice pleaded guilty to murder in the first degree. Certainly we are not anxious to share the responsibility for such a lamentable situation. We are well assured that the common practice in the district courts of this state is not to accept a plea of guilty *in any felony case* except on the well-considered advice of counsel for the prisoner; and some careful judges take other precautions to avoid miscarrage of justice which need not now be discussed." (p. 421.) (Emphasis supplied.)

In the Oberst case, *supra*, the defendant was accused of having committed much more infamous crimes than those involved in the present case. But the decision did not turn upon that point alone. Burglary in the second degree and grand larceny certainly are serious offenses and this court is of the opinion that no distinction necessarily arises in considering the general question because the defendant in one case is accused of murder and in another case is accused of some other felony.

The fundamental question involved is whether the petitioner in this case can be said to have intelligently, understandingly and in a comprehending manner entered his plea of guilty. In the often-quoted and followed case of *Johnson v. Zerbst*, 304 U. S. 458, 82 L. Ed. 1461, 58 Sup. Ct. 1019, 146 A. L. R. 357, the opinion reads as follows:

" . . . 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a *known right or privilege*. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case including the background, *experience,* and conduct of the accused." (Emphasis supplied.) (p. 46.)

The opinion continues:

"The purpose of the constitutional guaranty of a right to Counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." (p. 465.)

The opinion in *Johnson v. Zerbst* also develops the significant fact that where there has been no intelligent and comprehensive waiver of constitutional rights the court is without jurisdiction to accept the plea. It reads:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of Counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a Federal court's authority to deprive an accused of his life or liberty." (p. 467.)

The opinion continues:

". . . If the accused, however, is not represented by Counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing Counsel for an accused who is unable to obtain Counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. [citing *Frank v. Mangum*, 237 U. S. 309, 327, 59 L. Ed. 980.] If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by *habeas corpus*. [Citing *Re Neilsen*, 131 U. S. 176, 33 L. Ed. 118.]" (p. 468.)

We realize that the sixth amendment to the federal constitution may not be binding upon the states, but by the same reasoning the same results are reached under the fourteenth amendment thereto and under the due process clause of a state constitution. (See *Williams v. Kaiser,* 323 U. S. 471, 89 L. Ed. 398; *Tomkins v. Missouri,* 323 U. S. 485, 89 L. Ed. 407; *White v. Ragen,* 324 U. S. 760, 89 L. Ed. 1348; *Hawk v. Olson,* 326 U. S. 271, and *De Meerleer v. Michigan,* 329 U. S. 663 (decided February 3, 1947). But see, also, *Betts v. Brady,* 316 U. S. 455, 86 L. Ed. 1595.)

The record in the present case is silent as to the degree of intelligence which the petitioner may have possessed when he stood before the court. We cannot gather therefrom any knowledge pertaining to his educational attainments, general mental alertness or lack thereof. We assume, therefore, that he possessed average intelligence for a boy of his age. Upon such an assumption we reach the conclusion that ordinarily a seventeen-year-old boy is not possessed of sufficient comprehension of his constitutional rights in a felony case to waive them and that he should be given the benefit of consultation with counsel. We are of the opinion, also, that the possible presence of his father in the courtroom did not assure the petitioner of his constitutional rights. In such connection, it is interesting to note that the Supreme Court of Georgia has held that an accused is deprived of his right to be represented by counsel in violation of his constitutional right where the attorneys appointed by the court to represent him are ignorant and inexperienced. (See *Wilcoxon v. Aldredge,* 192 Ga. 634, 15 S. E. 2d 873, 146 A. L. R. 365 and the annotation pertaining to the general question here presented in 146 A. L. R. beginning at page 369.) Since the failure to appoint counsel for the petitioner in the present case and to require that the petitioner consult with such counsel deprived the court of jurisdiction to render judgment, it follows that the judgment entered upon the plea of guilty was void. It also follows that the failure to appoint counsel was not a mere trial error or irregularity and that the judgment can be attacked and set aside on a petition for a writ of habeas corpus.

In reaching the foregoing conclusion, this court is cognizant of the great amount of juvenile delinquency which appears to be prevalent in the country at the present time. We are not holding that in every case where the plea of a minor has been accepted without his having been compelled to consult with counsel, the

judgment and sentence entered thereafter necessarily is void. As hereinbefore set forth, the question whether one accused of crime has waived his right to the assistance of counsel must depend in each case upon the particular facts and circumstances. We hold only that in the present case the petitioner is unlawfully restrained in the penitentiary.

It does not follow, however, that he is entitled to be released from the custody of the law enforcement officers of this state. As was said in *Davis v. Hudspeth*, 161 Kan. 354, 167 P. 2d 293:

". . . Not all the proceedings in the district court were void. Such court had general jurisdiction of the subject matter by reason of the information having been filed therein. According to the allegations of the information reasons exist for the proper detention of the prisoner and the peace and dignity of the state demand that he be dealt with according to law." (See citations set forth therein.) (p. 356.)

The petitioner is not entitled to his absolute freedom and, therefore, the writ will be denied but it is ordered that the judgment and sentence entered on his plea of guilty be set aside; that he be discharged from his confinement under such illegal sentence and judgment; that he be placed in the custody of the sheriff of Crawford county, Kansas, in order that appropriate proceedings against him may be taken in the district court of such county.