Swagger *v.* State.

4859                           296 S. W. 2d 204

Opinion delivered December 3, 1956.

*George Howard, Jr.,* for appellant.

*Tom Gentry,* Attorney General; *Paul C. Rawlings,* Assistant Attorney General, for appellee.

Sam Robinson, Associate Justice. The appellant, Eugene Swagger, a boy nineteen years of age, pleaded guilty to the charge of assault with intent to kill and was given the maximum sentence of 21 years in the penitentiary. Later, after having been committed to the penitentiary, he filed a motion to set aside the judgment of conviction and order of commitment on the ground that he was not represented by counsel at the time he entered the plea of guilty.

On the night of April 13, 1956, S. R. Cady was shot and seriously injured. He was in his home, and the shot was fired through a window from the outside. The next morning, April 14, Swagger was arrested. On Friday, April 20, the Prosecuting Attorney filed an information in Circuit Court charging him with assault with intent to kill. Monday morning, April 23, the defendant pleaded guilty to the information and was sentenced to 21 years in the penitentiary. He was committed to the

prison, and on May 29, 1956 he filed a motion to vacate the judgment.

He alleges in the motion:

" (1)   That he is 19 years of age and has never been previously convicted of a crime; that he has completed nine years of schooling; that he resided on a farm with his grandmother who is a widow and is 68 years of age; that he was not financially able to employ an attorney to represent him and that the court did not appoint an attorney to represent him, nor was he advised of his right to counsel; that he was not permitted to communicate with his grandmother while confined in the Jefferson County Jail; that his bond was set at $5,000; that he is not in fact guilty of an assault with intent to kill, as charged in the information filed against him on the 20th day of April, 1956, by the Prosecuting Attorney for the 11th Judicial Circuit; and that he was not advised and did not know the full consequences of his plea at the trial of this matter on the 23rd day of April, 1956, and that he hereby requests that he be permitted to withdraw the plea of guilty and enter his plea of not guilty. That he was improperly induced and encouraged to enter the plea of guilty.   (2)   The defendant hereby requests that the court permit him to submit testimony to show that he is not guilty of the charge and also requests permission to submit evidence to show that he was improperly induced and encouraged to enter a plea of guilty.   (3)   That the defendant's mental condition was not brought to the attention of the court in view of the fact that he was not represented by counsel.   (4)   The defendant contends and alleges that he was deprived of one of his fundamental rights without due process of law in that he was not represented by counsel, and that this in essence was in contravention of the Constitution and laws of the State of Arkansas, and the due process clause of the Fourteenth Amendment to the Federal Constitution."   After a hearing, the trial court overruled the motion and Swagger has appealed.

Article 2, Section 10, of the Constitution of Arkansas provides that in all criminal prosecutions the accused

shall enjoy the right to be heard by himself and his counsel. Ark. Stats. § 43-1203 provides: "If any person about to be arraigned upon an indictment for a felony, be without counsel to conduct his defense, and shall be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, not exceeding two (2) who shall have free access to the prisoner at all reasonable hours." The Fourteenth Amendment to the Constitution of the United States provides that no State shall "deprive any person of life, liberty or property without due process of law."

The defendant had not been in trouble previously, and knew nothing about lawyers or court procedure. At the hearing on the motion to vacate the judgment, he testified to facts substantially as alleged in his motion. The Prosecuting Attorney, in response to questions by the Court, testified:

"Q. I will ask you to state whether or not the Court advised with you prior to the entering of a plea of guilty regarding this matter?

A. Yes sir.

"Q. Did you confer with this man, if so, what was stated to him about pleading guilty or not?

A. If the Court please, I did confer with the man in the jail and I told him at that time that he could enter a plea as stated from the stand and that I would get him 21 years — that it was immaterial to me whether he entered a plea or not, that he could get a lawyer and we would have a trial if he cared to have it. In the morning when he was in Court for arraignment and when he entered a plea I simply approached him at the bench, (interrupted).

"Q. I want to ask to interrupt you please and ask you if the Court asked you to check with him on that occasion?

A. The Court did.

"Q. Go ahead.

A. I conferred with him at that time and asked him if he was still in the attitude of pleading guilty — if he were, when the Court arraigned him and asked him if he was guilty or not guilty to simply enter a plea of guilty.

"Q. I will ask you if before he entered a plea of guilty you discussed it with the Court and if you advised the Court the nature of the crime and so on?

A. I did."

The Prosecuting Attorney was called back for cross examination and further testified:

"Q. Mr. Mullis, I believe you stated that you conferred with this man in the jail several times, at least twice, concerning a plea?

A. That's right.

"Q. Did you inquire into his financial standard?

A. No. I told him that the Court would appoint a lawyer for him if that is what you are getting at.

"Q. Did you ask him about his relatives?

A. I did not.

"Q. Did you ever meet his aunt?

A. I did not. As I recall I never saw her until she was in the Courtroom that morning.

"Q. You did not inquire whether he had relatives in Pine Bluff?

A. I did not."

The Court stated: "The Court wants to put this in the record — that in this case as in all cases of a grave nature like this the Court conferred with the Sheriff's force, with the Prosecuting Attorney and satisfied himself that the man was guilty as indicated by what the proof would have been before he permitted him to enter his plea of guilty. The Court was advised by the Prosecuting Attorney as he has testified and when the man

was brought into open court he was advised of the crime that he was charged with and the information was read to him and he was asked then if he was guilty and he stated that he was and wished to enter a plea of guilty.''

The record does not show that the Court personally informed the defendant that a lawyer would be appointed to represent him if he so desired. On cross examination, the Prosecuting Attorney stated that he had informed defendant while in jail that a lawyer would be appointed for him, but the defendant's response, if any, to such communication is not shown, and it does not appear that the defendant fully understood the Court would appoint a lawyer to represent him, and no lawyer was appointed.

We have held that it is within the discretion of the Court as to whether the defendant would be permitted to withdraw a plea of guilty. *Adams* v. *Plummer, Judge,* 213 Ark. 209, 209 S. W. 2d 868. But, in *Williams* v. *State,* 163 Ark. 623, 260 S. W. 721, we held that where there are grounds for believing that the defendant is not capable of conducting his own trial, the Court should not permit the trial to proceed without the defendant having the aid of counsel. In the *Adams* case, appellant alleged in his motion that he was deprived of his liberty without due process of law, but it was pointed out by this court that the petitioner offered no evidence in support of the motion. In the case at bar, appellant did produce evidence as to the circumstances surrounding his plea of guilty. It was shown that he is a negro boy, nineteen years of age, and is practically illiterate although his petition alleges he has gone to school; that he lives with an aunt 68 years of age; that during the few days he was held in jail, between the time he was arrested and the time he entered a plea of guilty, his aunt tried to visit him, but the jail authorities would not permit her to do so. True, the Prosecuting Attorney told the defendant while he was in jail that on a plea of guilty he would get him a sentence of 21 years in the penitentiary. But, it appears that perhaps the accused did not know that 21 years was the maximum sentence he could receive. In

fact, the record indicates that the accused may have thought that he could be sentenced to a longer term of imprisonment.

The proposition of whether the failure to appoint counsel for an indigent defendant was a violation of the due process clause of the Fourteenth Amendment has been before the courts many times. In most instances, since the decision in *Johnson* v. *Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357, the courts have held it to be error to permit a young, inexperienced person to plead guilty to a serious charge where he has no attorney. In the *Johnson* case, speaking of the defendant, the court said: "He requires the guiding hand of counsel at every step in the proceedings against him . . . The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused . . . The purpose of the constitutional guaranty of a right to Counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." However, the court is not bound in every case to appoint counsel. *Betts* v. *Brady,* 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595. But, in *Uveges* v. *Pennsylvania,* 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 127, it was held that where the gravity of the crime and other factors — such as the age and education of the defendant, and the nature of the offense charged, and the possible defenses thereto — render criminal proceedings without counsel likely to result in injustice, the accused must have legal assistance, "whether he pleads guilty or elects to stand trial, whether he requests counsel or not . . . Under either view of the requirements of due process, the facts in this case required the presence of counsel at petitioner's trial. He should not have been permitted to plead guilty without an offer of the advice of counsel in his situation." The defendant was charged with burglary.

In *Gibbs* v. *Burke,* 337 U. S. 773, 69 S. Ct. 1247, 93 L. Ed. 1686, the defendant in a State court did not request counsel and was permitted to try his own case. Several errors were committed prejudicial to the defendant. After conviction, the State Supreme Court denied the issuance of a writ of *habeas corpus.* The United States Supreme Court granted *certiorari;* appointed an attorney to represent the defendant and granted the petition for writ of *habeas corpus.* ·The court said: ''There have been made to this Court without avail arguments based on the long practice as to counsel in state courts to convince us that under the Fourteenth Amendment a state may refuse to furnish counsel even when needed by the accused in serious felonies other than capital. Our decisions have been that where the ignorance, youth, or other incapacity of the defendant made a trial without counsel unfair, the defendant is deprived of his liberty contrary to the Fourteenth Amendment. Counsel necessary for his adequate defense would be lacking.''

In *Willey* v. *Hudspeth,* 162 Kan. 516, 178 P. 2d 246, the Supreme Court of Kansas held that it was error to permit a 17 year old boy to plead guilty to the charge of breaking and entering in the night-time when he did not have the benefit of counsel. There, the court said: ''When the petitioner, as a boy only 17 years of age, stood before the court, under the laws of this state he could not have entered into a valid contract obligating himself; he could not have voted; he could not have married without the consent of a parent; he could not, alone, without a guardian or next friend, have been heard to say anything in the court room in a civil action which would have been binding upon him. Should we say, in such circumstances, that the only thing he could have done alone, with legal significance, was to have pleaded guilty to a felony in a court of law?'' And the court quoted from *State* v. *Oberst,* 127 Kan. 412, 273 P. 490: '' 'In the case before us the defendant was a 17 year old boy ... The one thing this youngster needed more than anything else before pleading guilty to such a horrifying accusation was consultation with and the advice of a good lawyer.' ...

Since the failure to appoint counsel for the petitioner in the present case and to require that the petitioner consult with such counsel deprived the court of jurisdiction to render judgment, it follows that the judgment entered upon the plea of guilty was void.''

In *Zeff* v. *Sanford, Warden,* 31 F. Supp. 736, it is pointed out that the court discussed the case with the Prosecuting Attorney and others to determine the sentence that should be imposed, and then permitted the defendant to plead guilty without the benefit of counsel. In a *habeas corpus* proceeding, it was held that counsel should have been appointed for the defendant even though it appeared that the judge, who had already been advised of the petitioner's desire to plead guilty, was trying to ascertain all of the facts available concerning petitioner and his crime in order that a just sentence might be imposed.

And, in *Howington* v. *State,* 30 Okla. Cr. 243, 235 P. 931, the Criminal Court of Appeals of Oklahoma set aside a judgment of conviction entered on a plea of guilty although the defendant was told of his rights.

In *Wade* v. *Mayo,* 334 U. S. 672, 68 S. Ct. 1270, 92 L. Ed. 1647, the court said: ''There are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment.''

It is our conclusion that in the facts and circumstances of this case the plea of guilty should not have been accepted without the defendant having benefit of counsel, and, in accepting the plea, the defendant's rights under the Fourteenth Amendment were violated.

The State contends that since the defendant had been committed to the penitentiary the court lost juris-

diction to set aside the judgment. This is ordinarily true. *Emerson* v. *Boyles,* 170 Ark. 621, 280 S. W. 1005. But where, as here, the judgment is void because of the want of due process of law, it has no force and effect, and can be vacated at any time. It is said, in *United States* v. *Bozza,* 155 F. 2d 592, where sentence for a void act may be superseded by a new sentence: ''It is no hindrance that the correction — even when it entails a greater punishment — occurs after sentence has been partially served or after the term of court has expired.''

The petitioner is not entitled to his absolute freedom, but it is ordered that the judgment and sentence on his plea of guilty be set aside and that he be placed in the custody of the Sheriff of Jefferson County that appropriate proceedings against him may be taken.

Reversed.

Mr. Justice McFADDIN concurs.

Justices MILLWEE and WARD dissent.

PAUL WARD, Associate Justice (dissenting). Although I agree with practically everything that is said in the majority opinion and particularly with the construction placed on the several cases cited therein, I am unable to agree with the exact manner in which the majority reached its final conclusion, nor, am I able to agree with the final conclusion itself.

On the last page of the majority opinion appears this paragraph: ''It is our conclusion that in the facts and circumstances of this case the plea of guilty should not have been accepted without the defendant having benefit of counsel, and, in accepting the plea, the defendant's rights under the Fourteenth Amendment were violated.''

It strikes me that the majority in reaching the above quoted conclusion by-passed one important question. It is: Does the evidence show that appellant did not have the capacity [mental or otherwise] to waive the offer of counsel? I have read carefully the decisions of the United

States Supreme Court cited in the opinion together with additional opinions: *Williams* v. *Kaiser,* 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398; *De Meerleer* v. *Michigan,* 329 U. S. 663, 67 S. Ct. 596, 91 L. Ed. 584; and; *Rice* v. *Olson, Warden,* 324 U. S. 786, 65 S. Ct. 989, 89 L. Ed. 1367. The rule announced by all of these decisions pertinent to the question involved in this case, may, as I understand it, be stated in this way: Every person who is charged with or tried for a criminal offense and who is unable to provide counsel, is, under the Federal Constitution, entitled to have an attorney appointed by the court, *unless* he waives the offer of counsel. The cases go on to explain that the question of waiver of counsel may be raised several different ways. For example: (a) If the accused is not advised of his right to have counsel, then it follows that he has not waived it, and (b) if the accused is so lacking in mental capacity that he is unable to waive the offer of counsel then it cannot be said that he has waived it, or (c) if [as in the case of *Gibbs* v. *Burke, Warden,* 337 U. S. 773, 69 S. Ct. 1247, 93 L. Ed. 1686] during a *trial* some legal question arises which the accused [even though of full age and sound mind] could not possibly comprehend, then he cannot be said to have waived counsel and his rights have been violated.

Therefore, it appears to me, that in every case of this nature a fact question is presented. The point which I here try to stress is amplified in the *Rice* case, *supra,* where the court said: "It is enough that a defendant charged with an offense of this character is incapable adequately of making his defense, that he is unable to get counsel, and that he does not intelligently and understandingly waive counsel." Applying the rule above announced I view the cause under consideration in this manner: Appellant was advised by the prosecuting attorney of his right to have counsel appointed by the court, and evidently did not accept it, and I am not convinced that appellant did not have sufficient mental capacity to understand what he was doing when he refused the offer. In this connection, I hold to this view: If the evidence regarding appellant's mental capacity poses a

close question, then I would resolve the doubt, if any, in view of the finding of the trial court. Any other procedure, it seems to me, would be impracticable, unreasonable, and contrary to established procedure. In all other fact matters this court defers to the discretion and sound judgment of the trial judge, so why not in this instance. So, I would affirm.