MEEKS *v.* STATE.

5149 396 S. W. 2d 306

Opinion delivered December 6, 1965.

*George Howard,* for appellant.

*Bruce Bennett,* Attorney General, By: *Farrell Faubus,* Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. The appellant, Eugene Meeks, 19 years of age, pleaded guilty to the charge of burglary and was sentenced to six years in the penitentiary. About six weeks later he filed a motion to set aside the judgment, and that he be allowed to enter a plea of not guilty. The motion was overruled, and he has appealed to this court.

It appears that on July 29, 1964, a felony information was filed by the prosecuting attorney in the circuit court charging appellant with burglary. It further appears that the burglary is alleged to have been committed on July 27; the appellant was arrested on that same day; on August 5 he pleaded guilty and was sentenced.

In his motion to set aside the judgment, appellant alleged that he is not guilty, but that he pleaded guilty because he was told by officials that it would be better for him to do so; that he would get less time than he would by standing trial. The officials deny that any such statement was made to appellant. The learned trial judge found as a fact, that in all probability appellant received a lesser sentence than he would if he had gone to trial on a plea of not guilty.

But be that as it may, we do not find any substantial distinction between this case and the case of *Swagger* v.

*State,* 227 Ark. 45, 296 S. W. 204. There we said: "In most instances, since the decision in *Johnson* v. *Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357, the courts have held it to be error to permit a young, inexperienced person to plead guilty to a serious charge where he has no attorney." The point is fully developed in Swagger, and that case is controlling here.

Reversed and Remanded.

HARRIS, C. J. & WARD & JOHNSON, J. J., dissent.

CARLETON HARRIS, Chief Justice (dissenting). As I interpret the majority opinion, it holds that the fact that a defendant is a minor (less than twenty-one years of age) is sufficient in itself to require that the trial court appoint an attorney for him before any plea can be entered. I agree that, in some instances, an attorney should be appointed, but I emphatically disagree that it should be done in every instance solely because a defendant is not legally an adult.

This defendant is nineteen years of age. By statute (Ark. Stat. Ann. § 34-2001 [Repl. 1962]), any male person of the age of eighteen years,[1] may have his disabilities (of minority) removed by court order, and he is then authorized to "transact business in general * * * with the same effect as if such act or thing were done by a person who had attained his or her majority; * * * and every act done * * * shall have the same force and effect in law and equity as if done by a person of full age." It is thus apparent that the law contemplates that a boy eighteen years of age is, generally speaking, mentally capable of transacting business to the same degree as an adult.[2]

Arkansas law permits a young man eighteen years of age to enter into a marriage contract if he has the

[1] He must also be a resident of the county in which he files his application.

[2] The Circuit and Chancery Courts are empowered to enter orders removing disabilities, but it is largely within the discretion of the court as to whether particular petitions for removal of disabilities should be granted.

consent of his parents or guardian. Ark. Stat. Ann. § 55-102 (Supp. 1965).

Arkansas law permits a person eighteen years of age to make a will. Ark. Stat. Ann. § 60-401 (Supp. 1965).

A nineteen-year-old boy (and younger) is subject to the military draft, so apparently Congress feels that one of that age is normally sufficiently intelligent to understand military training, and to learn how to defend himself in combat.

I could go on endlessly with this list, but the point is that if a young man is intelligent enough to do the things mentioned, he is likewise intelligent enough to know whether he wants a lawyer. Bear in mind that this is not a case wherein an indigent defendant requested a lawyer as in *Gideon* v. *Wainwright,* 372 U. S. 335, and to me, there is a vast difference in this case and *Swagger* v. *State,* 227 Ark. 45, 296 S. W. 2d 204, relied upon by the majority. In *Swagger, the defendant was not informed by the court that a lawyer would be appointed to represent him if he so desired.* In the present case, *it is admitted that the court did offer to appoint counsel for Meeks,* and he refused the offer,[3] but it is now asserted that appellant did not understand the value, or the significance, of counsel. However, I find nothing in the record to establish that fact. Appellant appears to possess normal intelligence. His father was present in the courtroom on the day that Meeks entered the plea of guilty, and the father had previously visited and talked with his son at the jail. In fact, it appears that the only request made at that time by the elder Meeks was that his son be committed to the State Hospital for observation—which was done.[4]

I reiterate that there may well be instances where, under particular facts and circumstances, an attorney should be appointed for a youthful defendant before any

[3] If the court had not informed Meeks of his right to counsel at the time of the plea, I would also vote to reverse.

[4] The hospital report reflected "without psychosis."

plea is taken[5]—but I certainly do not feel that this case comes within that category.

Summarizing:

1. Meeks had finished Junior High School, and from the record, appears to possess normal intelligence.

2. He was admittedly offered counsel before he entered his plea of guilty, but refused the offer.

3. His father was present in the courtroom at the time the plea was entered, and had previously talked with his son, but raised no objection.

*Gideon* v. *Wainwright, supra,* holds that an indigent prisoner is entitled to counsel unless he "competently and intelligently" waives same. I am of the view that appellant was capable of waiving the right to counsel, and I deeply regret that this court is holding that one fact alone is sufficient to reverse this case—that fact being that appellant was only nineteen years of age.

I respectfully dissent.

I am authorized to state that Mr. JUSTICE JOHNSON joins in this dissent.

PAUL WARD, Associate Justice, (dissenting). On October 18, 1965, by a *Per Curiam* Order, we promulgated "Criminal Procedure Rule No. 1." In brief, this Order sets up procedure by which a person, who has been finally adjudged guilty of a crime, who is confined in the State Penitentiary, and who claims one or more of his constitutional rights have been violated, can make application for another trial. This is a new (and untried) form of procedure adopted recently by this and numerous other state courts in an effort to stem the flood of such applications resulting from recent decisions by the U. S. Supreme Court.

The case under consideration gives us the first opportunity to interpret this rule and proscribe procedure

[5] For instance, a boy in his early teens; an illiterate; a defendant, not legally insane, but mentally retarded; a youngster far away from family and friends.

for preliminary hearings thereunder. For example; The trial judges should know how much, if any, weight we give to their findings; To what extent, and for what purpose, may testimony be introduced to show the guilt or innocence of the applicant?

The majority have not seen fit to approach the case in the manner mentioned, but have reversed the trial court entirely upon the opinion in *Swagger* case decided nearly ten years ago, and which opinion was largely rested on the *Zerbst* case which was decided in 1938. As the record will show, I did not agree with the *Swagger* opinion at the time however that fact is not the sole basis of my dissent in this case. I will attempt to show briefly that the opinions mentioned are not controlling here, and that both can be distinguished on the facts from this case.

On this appeal, prosecuted under Criminal Procedure Rule No. 1, there are only two questions for this Court to decide: (a) Was appellant pressured by the Bradley County officials into confessing his guilt, and (b) Did appellant intelligently waive counsel?

(a) In answer to this question I wish merely to call attention to portions of the majority opinion. One, the opinion shows that appellant said he *was* so induced, that the officers said he *was not,* and that the trial judge believed the officers. Two, the majority make no attempt to answer the question but take the position it was immaterial to do so.

(b) Did appellant intelligently waive counsel? Again, there are at least two reasons why (under the record before us) the answer should be in the affirmative.

*One.* Contrary to the position taken by the majority I contend there is a substantial distinction between this case and the case of *Swagger* v. *State.* In the *Swagger* case appellant's mental condition was an issue but was not brought to the attention of the court in view of the fact he was not represented by counsel. In the case under consideration there is no such issue to rely on

for a reversal. The record shows the trial judge sent him to the State Hospital for an examination where he was found to be normal. Since the issue is appellant's capacity to understand what he did, the above distinction is fundamental and decisive.

*Two.* The majority have failed to recognize any difference between the mental capacity necessary to plead guilty and the mental capacity to properly defend himself on trial. In other words, appellant (if he was innocent) might need a lawyer to defend him in court, yet might not need a lawyer to tell him whether he broke into Lowrey's home. This line of reasoning may seem to be oversimplified, but it is fundamental, and it is exactly the line of reasoning used by the U. S. Supreme Court in the *Zerbst* case is so heavily relied on by the majority. Incidentally, in the *Zerbst* case, the assured pleaded *not guilty* and stood trial without a lawyer.

When, in the judgment of our president and congress, a seventeen year old boy has enough intelligence to serve with the armed forces in foreign lands, my mind must refuse to believe that a normal nineteen year old boy (with ten years schooling) does not have enough intelligence to know when he has stolen a car, robbed a man, accosted a woman, or broken into a house.