**E. DILLINGHAM, INC.**

v.

**UNITED STATES.**

**C.D. 4420, Protest 0712-0-000107.**

United States Customs Court.

Decided April 30, 1973.

Sharretts, Paley, Carter & Blauvelt, New York City (Eugene F. Blauvelt, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Martin Kirshner, and Bernard J. Babb, New York City, trial attorneys), for defendant.

FORD, Judge:

This action is directed against the classification of certain female bovines described on the invoice as 9 grade heifers under the provisions of item 100.53, Tariff Schedules of the United States, and the consequent assessment of duty at the rate of 1.5 cents per pound. All the animals involved weighed over 700 pounds each and all were at the time of importation with first calf (pregnant).

Plaintiff contends said animals are in fact cows imported specially for dairy purposes and as such subject to duty at 1 cent per pound under item 100.50, Tariff Schedules of the United States.

The pertinent statutory provisions involved herein provide as follows:

*Tariff Schedules of the United States:*

Schedule 1.

### Part 1.—Live Animals

*Part 1 headnotes:*

\* \* \* \* \* \* \* \*

2. Unless the context requires otherwise, each provision for named or described animals applies to such animals regardless of their size or age, e. g., "sheep" includes lambs.

\* \* \* \* \* \* \* \*

Live animals other than birds:

\* \* \* \* \* \* \* \*

Cattle:

\* \* \* \* \* \* \* \*

Weighing 700 pounds or more each:

| | | |
|---|---|---|
| 100.50 | Cows imported specially for dairy purposes ............................ | 1¢ per lb. |
| | Other: | |
| 100.53 | For not over 400,000 head entered in the 12-month period beginning April 1 in any year, of which not over 120,000 shall be entered in any quarter beginning April 1, July 1, October 1, or | |
| | January 1 ..................... | 1.5¢ per lb. |

In view of the assessment at 1.5 cents per pound and the lack of pleadings relative to the quota of 400,000 head per year, it would appear these animals fall within the quota.

The question presented is twofold: (1) Is a female bovine which at the time of importation was with calf for the first time (pregnant) a heifer or a cow? (2) If the animal is a cow within the purview of the Tariff Schedules of the United States, was it imported specially for dairy purposes? In view of my holdings, *infra,* this question is moot.

Plaintiff elicited the testimony of six witnesses and introduced two exhibits into evidence. Defendant called three

witnesses and introduced two exhibits into evidence.

Mr. Robert Perry, a member of the partnership of the actual importers, Goldberg Brothers, testified that he purchases cattle in Canada known as springers. A springer according to the witness is an animal which is going to freshen, that is have a calf in a month or so. He testified he has been in the business of purchasing cattle for 13 to 15 years. The witness purchased the cattle described on the invoice as 9 grade heifers from dairy farmers in Canada. Mr. Perry testified he received a Canadian Department of Agriculture certificate of tests performed such as blood and brucellosis to indicate a clean animal. A heifer according to Mr. Perry is a young cow.

On cross-examination, Mr. Perry defined a cow as an animal that produces a calf and stated that it is possible to milk a heifer for commercial purposes. On redirect, he admitted the heifer being milked for commercial purposes would be an animal known as a first calf heifer. According to the witness, a cow in her second lactation is sometimes referred to as a second calf heifer but this designation does not continue to third calf, etc.

Mr. Norman Goldberg, a partner in the importing firm, testified he has been in the business of purchasing dairy cows for export to the United States for 32 years. He indicated a heifer denotes the sex of the animal and that the counterpart of a heifer calf is a bull calf. The term cow according to the witness is a matured animal with a full mouth (8 teeth).

The witness stated the commercial life expectancy of a dairy cow is five years which would mean two or three lactations; that normally one-third of a herd is replaced each year. The witness was familiar with the publication "The Holstein-Friesian Journal." This publication according to Mr. Goldberg has a general circulation in the dairy industry. The issue of January 1972 was received in evidence as plaintiff's exhibit 1.

Mr. Goldberg then testified an animal in her first lactation is a cow; that an animal which will give birth to her first calf in three or four months is a springer. A first calf heifer is also a cow in his opinion. The heifers referred to on the invoice covered by this action had not calved or lactated at the time of shipment according to the witness.

Mr. Philip Goldberg was next called by plaintiff and testified he is a partner in the importing firm of Goldberg Brothers and that he resides in Connecticut. In addition to the 9 grade heifers involved herein which he sold to two large dairy farms in Connecticut, he also buys cattle in the United States. Based upon his 32 years' experience, it was his opinion that a dairy cow is one with a full mouth, that is, having eight teeth. Prior to that time and age, Mr. Goldberg testified they are not mature cows.

A heifer in the opinion of Mr. Goldberg is a female bovine; a heifer about to have a calf and visibly several months along is known as a springer. However, Mr. Goldberg stated the terms heifer and young cow amount to the same thing. For credit purposes a pregnant heifer is valued as a cow. The reason is set forth as follows:

Q. How do you list pregnant heifers?—A. When we are sure they have conceived, we value them as a cow and at some times of the year, as now, they are worth more than a cow.

Q. Why is it that they are worth more than a mature animal?—A. Well, various areas of the country want to level the milk production and the hardest time to produce milk is in the Fall, September, October, November, when the grass grows dry and the cattle have to come into the barns. In many states and in many areas, they offer a premium for milk made at that time. In Connecticut and in most of New England, as a matter of fact, for the months of May and June you are penalized if you produce more milk than you did at a given time, let's say, last September, October and November. This money goes into a

fund *and if a person produces an* equal amount of milk in the Fall, he gets back the 50 cents or 75 cents deducted. If he produces more, he gains on his premium. The animal producing milk in the Fall of the year is thereby worth more money.

On cross-examination, the witness admitted the involved cattle had not calved at the time of importation. In the opinion of the witness when a heifer becomes pregnant, it is considered a cow. The age at which Holstein heifers are bred according to the witness is generally 18 months of age.

Mr. Richard Lewis, a dairy farmer for nearly 40 years, was next called on behalf of plaintiff and testified that a cow is a female bovine. This witness raises all his own calves and does not buy cows. His experience is that Holsteins are bred anywhere from 16 months of age and up. The witness then testified a heifer is a young cow, a first calf heifer is one milking for the first time, and a second calf heifer is one milking for the second time. It is not common in the opinion of the witness to call an animal in third lactation a third calf heifer.

Upon questioning by the court, the witness testified that at birth a calf is either a heifer calf or a bull calf. He considered an animal up to one year of age a calf and after that yearling heifers, two- or three-years-old heifers, etc.

Next called on behalf of plaintiff was Robert Thompson, a life-long dairy farmer from New York State. He testified that he is chairman of the board which buys bulls for the Eastern Artificial Insemination Cooperative which serves New York and New England; that he has held the position for five years and has traveled throughout the United States in order to inspect herds and purchase bulls. It was the opinion of Mr. Thompson that a two-year-old female Holstein with calf at the time of importation would be considered a bred heifer or a springer. The witness' understanding of the term cow was given as follows:

A. Well, you have broad terms here. We never refer to an animal as a cow until after she has had a calf. In some cases, we will refer to them as cows two years old and three years old and on up. In other cases, we refer to them as two-year old heifers and three-year old heifers. On the other hand, we have cases at home where we refer to a yearling as a cow because we bring some heifers into production before they are two years old, down to almost 22 months.

The witness testified he was familiar with the publication "The Holstein-Friesian World." The January 1972 edition published by the Holstein-Friesian Association of America, limited to pages 24 and 25, was received in evidence as plaintiff's exhibit 2. Mr. Thompson further testified that the terms used therein are common terms to animals of the type depicted; that a senior yearling heifer is between 18 months to 24 months of age; that such an animal is not ordinarily considered a cow until she produces a calf. For financial purposes, the witness stated, a springer is listed with the cows.

On cross-examination, Mr. Thompson testified a cow is one that has freshened. By freshened, he indicated he means has had a calf. The witness then testified that a bred heifer is one which is pregnant but has never had a calf, and is not a cow except for loan purposes. He designated an open heifer as one which has not been bred. Mr. Thompson indicated he is a member of the New York Holstein Association for which he pays a flat fee plus an additional amount for each milking cow or such cows which have been milked. A bred heifer even in the last months would not be counted for dues purposes according to the witness.

Mr. Irwin McQuer, a farmer and licensed cattle dealer, testified that a cow is a female with a full mouth, that is eight teeth. A heifer to witness McQuer is a young cow.

Defendant called as its first witness Dr. Edwin Smith, a veterinarian li-

censed by the State of New York and a professor of animal science at Canton Agricultural and Technical College. He is a practicing veterinarian having graduated from the New York State Agricultural College at Cornell in 1941 and receiving his doctor of veterinarian medicine in 1943. Dr. Smith was born and reared on a farm and has owned a farm. Based upon his experience and training, the witness considers a cow an animal that has those anatomical and physiological changes brought about by having a calf. He testified a heifer is a female bovine that has not had a calf; that a first calf heifer having had a calf is actually a cow and a bred heifer is a female bovine that has never had a calf but has been bred and has conceived. Such an animal in the opinion of the witness is not a cow nor can it be milked for commercial purposes.

Dr. Smith indicated he has attended at least five auctions a year since becoming a veterinarian. He further testified that at auctions, the animals are broken down into categories: heifer calves, yearling heifers, unbred heifers, bred heifers and cows; that bred heifers, the first time with calf, are not cows; that neither age nor teeth are a factor in determining whether the animal is a heifer or a cow. According to the witness, neither a bred heifer nor an open heifer can be milked for commercial purposes.

Defendant called Dr. Frank Bancroft, a veterinarian with the United States Department of Agriculture. He graduated from Cornell as a veterinarian in 1934 and practiced privately before entering United States service. The witness testified a heifer is a female bovine that has never had a calf or lactated; that a bred heifer is one which has been bred but has not had a calf. A cow according to Dr. Bancroft is a bovine animal that has had a calf and lactated.

The final witness called on behalf of defendant was James Repard, executive secretary of the New York State Holstein Association, a voluntary organization whose purpose is the promotion and merchandising of Holstein cattle. In addition to his employment with the association, he also operates a farm. At present, he also buys cattle for the association which charges a commission.

Mr. Repard testified that a cow is a female bovine that has had her first calf; that a heifer remains a heifer until she has her first calf; that a bred heifer is a female bovine that has conceived for the first time and has not calved. An open heifer, according to Mr. Repard, is a heifer from 12 months to breeding age. A female bovine, five years of age that has never calved, is not a cow according to the witness. It was suggested by the witness that a female bovine over 30 months which has not conceived might possibly be a freemartin and as such not ordinarily retained in a dairy herd.

Mr. Repard testified further that a first calf heifer is a cow. The witness indicated that "The Holstein-Friesian Journal" (exhibit 1) is a Canadian magazine and the animal designated "All-Canadian 3-Year Old-Heifer" is a cow that has had two calves and would be called a three-year-old cow in the United States. Upon examining plaintiff's exhibit 2, "The Holstein-Friesian World," the witness stated that the heifer depicted does not develop a mammary system, i. e., udder, whereas the two-year-old cow, depicted in exhibit 2, is in lactation because she has calved.

According to the witness, the New York State Holstein Association members pay dues based upon a $10 minimum. The charge is 25 cents for each cow in the herd. Neither open heifers nor bred heifers are subject to the charge. On the national level 131,000 head of cattle have been registered and classified in accordance with the requirements set forth in defendant's exhibit A.

The witness attended 30 to 40 auctions in 1971 and identified defendant's exhibit B as a catalogue of a sale on May 6, 1972, which is typical of catalogues used at auction sales. The animals are broken down into various cate-

gories. Lot 22 is described as cow—meaning she is in lactation; lot 23 is described as H. C.—which according to Mr. Repard means heifer calf which would be a heifer under one year of age; lot 24 is described as 1st—meaning she is milking for the first time; lot 25 is described as B. H.—meaning a bred heifer which is a pregnant heifer that has not calved for the first time; and lot 30 is listed as O. H.—which stands for open heifer. Based upon Mr. Repard's experience, an open heifer is an animal between 12 and 26 months of age and ready to be bred.

It is plaintiff's position that by virtue of headnote 2, part 1 of schedule 1,[1] the term cow includes all cows regardless of age or size if weighing over 700 pounds as provided for in item 100.50, *supra.* The weight limitation, it is contended, would eliminate calves but not young cows weighing over 700 pounds. The court notes the introductory sentence of said headnote begins with the phrase "Unless the context requires otherwise." One of the provisions of the headnote is size yet item 100.50, *supra,* specified "weighing 700 pounds or more each." It is apparent to the court that this headnote does not apply to item 100.50, *supra,* not only because of the minimum weight requirement but for the reasons set forth, *infra.*

Since the animals involved are of the Holstein breed and several witnesses testified they were members of the Holstein-Friesian Association, it is interesting to note the following background information contained in Introductory Animal Science by Anderson-Kiser, 1963, and published by The Macmillan Company:

### THE HOLSTEIN-FRIESIAN

This breed originated in the two northern counties of the Netherlands —West Friesland and North Holland. The breed is commonly known here as the "Holstein," but in other countries it is called "Friesian." The joint or official name was established when the two associations were combined in this country in 1885. The origin of the breed is obscure, but it is an old breed, having been selected for milking qualities for more than 2,000 years. Its homeland has a fertile soil, abundant rainfall, and excellent pastures. Pasture feeding prevails during the summer, and barn feeding is practiced in winter.

Cattle from Holland were brought to this country by the first Dutch settlers. The first importation of Holsteins was made in 1795, but Holsteins bred as such here were imported in 1852. For a time numerous other importations were made, but 1905 marked the last time Holsteins were imported from Holland.

One of the requirements for classification of herds by the Holstein-Friesian Association of America, as contained in defendant's exhibit A, is that the animal must have dropped at least one calf. The testimony of Mr. Repard also establishes this as a requirement of said association for registration of cows.

The remaining question presented to the court is whether a heifer with calf for the first time is a cow as that term has been utilized in the tariff schedules. Insofar as research reveals, the language involved herein appears for the first time in any tariff act of the United States. There being no attempt to establish a commercial designation, the meaning of the term cow is the common meaning. In the field of customs jurisprudence, the common meaning of a tariff term is a matter of law and not an issue of fact. United States v. Shalom & Co., 33 CCPA 29, C.A.D. 311 (1945); Stephen Rug Mills v. United States, 32 CCPA 110, C.A.D. 293 (1944); United States v. Florea & Co., Inc., 25 CCPA 292, T.D. 49396 (1938).

---

1. 2. Unless the context requires otherwise, each provision for named or described animals applies to such animals regardless of their size or age, e. g., "sheep" includes lambs.

■■ The court in determining the common meaning of the tariff term may receive testimony from witnesses as to common acceptance of the term but such evidence is merely advisory. Courts may consult dictionaries, lexicographic authorities, prior judicial decisions and legislative history or draw upon their own knowledge in making their determination of the common meaning. Absorbo Beer Pad Co., Inc. v. United States, 30 CCPA 24, C.A.D. 209 (1942); United States v. John B. Stetson Co., 21 CCPA 3, T.D. 46319 (1933).

As indicated, *supra,* the language involved is new and accordingly there appears to be no judicial decisions in customs jurisprudence as to what constitutes a cow. Research reveals the legislative history is barren of any information concerning the involved provision. The court therefore will consider the dictionary and lexicographic information together with the testimony to refresh its recollection as to the common meaning of the term cow.

The recollection of this member of the court needs little refreshing having been born and reared on a farm in the beautiful and fertile Red River Valley of North Dakota. While my father's farm was not a dairy farm, he did have milking cows including Holsteins. Among the chores assigned to me as a young lad, my father accorded me the dubious honor of milking the cows on a twice daily basis.

The testimony as indicated, *supra,* suggests that an honest difference of opinion exists among those who are knowledgeable in this field. This is further amplified by the lexicographic information which contains the following information:

Dictionary of Agriculture and Allied Terminology

by John N. Winburne (1962) (Michigan State University)

Cow – a market term for designating a female bovine which has produced a calf.

Encyclopaedia Britannica, Vol. 5, p. 86 (1970)

The age at which * * * a heifer [becomes] a cow is not clearly defined and the designation varies.

Webster's New International Dictionary, Second Edition, Unabridged (1949)

Heifer – 1. A young cow; a cow that has not had a calf.

Volume 39, C.J.S., page 880

HEIFER. A young cow.[87] More accurately a cow that has not had a calf;[88] although it is sometimes inaccurately used as referring to a mature cow that has had a calf.[89]

*footnote* 87. Ark.—Fletcher v. State, 128 S.W.2d 997, 999; 198 Ark. 376
88. Ark.—Fletcher v. State, *supra.*
89. Ark.—Fletcher v. State, *supra.*

Introductory Animal Science, Anderson-Kiser, Macmillan Co., *supra.*

Heifers. A heifer is a young female bovine that has not had a calf and has not reached the stage of advanced pregnancy. Spayed or unsexed heifers are not greatly different from unaltered heifers; consequently they are classed in the same group.

Cows. A cow is a female bovine that has developed, through reproduction or with age, relatively prominent hips, a large middle, and other physical characters typical of mature females.

It is to be noted that the latter definition of the term cow relates to physical characteristics. This is analogous to the testimony of Dr. Smith when he testified that it is not age that determines whether an animal is a cow but anatomical and physiological changes brought about by giving birth to an offspring.

In the book, Breeding and Improvement of Farm Animals by Rice, Andrews, Warwick and Legates, Sixth Edition, published by McGraw-Hill, the physical appearance is also set forth as a factor and the following information appears:

> During each calving interval, a cow usually undergoes a cyclic change in physical appearance. In the majority of cases the cow puts on flesh during the dry period and has a certain bloom, which is lost during lactation. The size and appearance of the udder also changes. Data collected at the West Virginia Station indicated that classification ratings were higher on cows classified during the first three months of a lactation or just before freshening as compared with the middle segment of the lactation. * * *

It is evident to the court that the conformation of the animal which results after calving constitutes one determining factor.

In Freeman v. Carpenter, 10 Vt. 433 [33 Am.Dec. 210] (1838), Chief Judge Williams was of the opinion that for a bovine to be a cow it must have had a calf and commented as follows:

> * * * The articles exempted are, generally, of small comparative value, and it would be productive of more unhappiness and distress to the debtor to permit them to be taken by attachment and execution, than of real substantial benefit to the creditor. The statute, in terms, exempts one cow from attachment and execution. Possibly, if it were a penal statute, it might be considered that the term only applies to the animal after she had brought forth a calf. This is un-

doubtedly, not only the common, but the correct meaning of the term. In the case of Dow v. Smith, 7 Vt. 465 [29 Am.Dec. 202], it was considered that the term made use of had, in this statute, a more extensive meaning, and included a heifer, adopting the definition which, in some dictionaries, and by some writers, is given to that term, to wit, a young cow. The decision in that case, must govern the one before us. If the court correctly decided that the exemption in the statute extended to a heifer, or young cow, it can not and ought not to be made a subject of inquiry whether she was, or was not forward with calf, or with calf at all. I presume this did not enter into the consideration of the court in making the decision. The correct definition of the term, heifer, is a female calf of the bovine species, from the end of the first year, until she has had a calf, and such animals, according to the decision before referred to, are exempt from attachment and execution, under the statute.

Notwithstanding the common meaning of the term as held by Chief Judge Williams in 1838, he nevertheless held the levy against the heifer to violate the statute involving attachment of a cow to satisfy a judgment. This was obviously based upon weighing the distress to the debtor against the benefit to the creditor. The statute involved herein is neither penal nor one involving an attachment and is clearly distinguishable.

■ In the judgment of the court, neither time nor mother nature has changed the common as well as the correct meaning of the term cow. The court is of the opinion that a heifer does not attain the status of a cow until parturition takes place for the first time.

I therefore hold the imported heifers are not cows within the purview of item 100.50, Tariff Schedules of the United States.

Judgment will be entered accordingly.